# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DISTRICT OF COLUMBIA

|  |  |
|---|---|
| FRIENDS OF THE CAPITAL CRESCENT TRAIL, *et al*., | ) No. 1:17-cv-01811-RJL |
|  | ) |
|  | ) Hon. Richard J. Leon |
| Plaintiffs, | ) |
|  | ) |
| v. | ) **FEDERAL DEFENDANTS'** |
|  | ) **MOTION TO DISMISS** |
| FEDERAL TRANSIT ADMINISTRATION, *et al*., | ) **PLAINTIFFS' COMPLAINT** |
|  | ) **UNDER RULE 12(b)** |
|  | ) |
| Defendants. | ) |
|  | ) |

## LIST OF EXHIBITS

| Ex. # | Description |
|---|---|
| 1 | List of Allegations Related to Claims Precluded and/or Barred by the Statute of Limitations |
| | **"March 2 Submission"** |
| 2 | Letter from Ajay Bhatt to Secretary Chao dated March 2, 2017 |
| 3 | "Maryland's Incredible Purple People Mover, How the state's proposed $2.4 billion light rail could take taxpayers for a ride," Wall Street Journal, Mary Anastasia O'Grady, June 27, 2014 |
| 4 | "Opinion: Why the Washington D.C. suburbs need to rethink this light-rail project," MarketWatch, Diana Furchtgott-Roth, Aug 15, 2016 |
| 5 | "Metro scramble to fill budget hole leads to charged exchanges on board," Washington Post, Faiz Siddiqui, February 23, 2017 |
| 6 | "As budget cuts loom, hundreds rally to tell Metro board: 'Leave bus lines alone,'" Washington Post, Faiz Siddiqui, February 1, 2017 |
| 7 | "Regional transit ensnared in Metro penalty," Standard Examiner, Martine Powers, February 19, 2017 |
| 8 | "U.S. withholds millions of dollars until Metro Safety Commission is created," Washington Post, Lori Aratani and Martine Powers, February 10, 2017 |
| 9 | Letter from Maryland State Highway Administration to Metropolitan Washington Council of Governments dated October 21, 2014 |
| 10 | Montgomery County Mobility Assessment Report 2017, Table 1. |
| 11 | Letter from Bradley E. Heard to Terry Garcia Crews dated February 20, 2017 |
| 12 | Application To Appropriate and Use Waters of the State dated August 3, 2016 |
| 13 | Preliminary Impact Analysis Summary dated January 30, 2017 |
| 14 | Comments on the Application to Appropriate and Use Waters of the State dated February 3, 2017 |
| 15 | Email string from David C. Culver to John MacKnight Fitzgerald dated February 22, 2017 |

| Ex. # | Description |
|---|---|
| 16 | Montgomery County Historic Preservation Commission, Historic Area Work Permit #778187: Relocation of historic structure at 7250 Wisconsin Avenue dated December 12, 2016 |
| 17 | Testimony of John M. Fitzgerald *et al.* Before the Montgomery County Historic Preservation Commission, In re: The Community Hardware and Paint Store Building dated October 5, 2016 |
| 18 | Excerpt from unidentified document |
| 19 | Decl. of Brian Detwiler dated February 27, 2017 |
| 20 | Email from Dedun Ingram to Yahoo! Group dated February 28, 2017 |
| 21 | List of web sites re barred owls |
| 22 | Letter from John Fitzgerald to Glenn Therres and Lori Byrne, Maryland Department of Natural Resources dated February 22, 2017 |
| 23 | Letter from Maryland Department of Natural Resources to Maryland Transit Administration dated October 26, 2011 |
| 24 | Email from Maryland Office of the Attorney General to unknown recipient dated February 28, 2017 |
| **"June Submission"** | |
| 25 | Decl. of Bradley E. Heard, *Purple Line I*, ECF No. 147-2 |
| 26 | Decl. of Donald W. MacGlashan, *Purple Line I*, ECF No. 147-3 |
| 27 | Decl. of Michael V. Nixon, *Purple Line I*, ECF No. 147-4 |
| 28 | Decl. of John Bickerman, *Purple Line I*, ECF No. 147-5 |
| 29 | Decl. of Albert M. Manville, II, *Purple Line I*, ECF No. 147-6 |
| **Other Exhibits** | |
| 30 | Decl. of Frank J. Lysy, *Purple Line I*, AR5_00669-77 (submitted with Plaintiffs' October 9, 2015 Petition for an SEIS) |
| 31 | Decl. of Frank J. Lysy, *Purple Line I*, ECF No. 100-1 (filed in opposition of Defendants' motions for reconsideration) |
| 32 | Second Decl. of Frank J. Lysy dated January 4, 2017, *Purple Line I*, ECF No. 119-1 (filed in opposition to Defendants' renewed cross-motions for summary judgment) |
| 33 | Maryland Department of the Environment Bethesda Shaft Water Appropriations Permit, February 28, 2017 Meeting Minutes |

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................. 1

STATUTORY BACKGROUND................................................................................. 3

I.    Federal Transit Act. .................................................................................. 3

II.   National Environmental Policy Act. .......................................................... 4

III.  Administrative Procedure Act.................................................................... 6

FACTUAL AND PROCEDURAL BACKGROUND..................................................... 6

STANDARD OF REVIEW ...................................................................................... 10

I.    Federal Rule of Civil Procedure Rule 12(b)(1).......................................... 10

II.   Federal Rule of Civil Procedure Rule 12(b)(6).......................................... 11

ARGUMENT ....................................................................................................... 12

I.    Plaintiffs' Challenge to the Full Funding Grant Agreement Under 49 U.S.C. § 5309
      Should Be Dismissed Because They Lack Article III Standing to Raise the Claim and
      Plaintiffs Fall Outside the Zone of Interests of The Federal Transit Act......................... 12

      A.  Plaintiffs Lack Article III Standing to Raise Their Claim Under 49 U.S.C. § 5309 .. 12

      B.  Plaintiffs' Section 5309 Claim Fails Because It Does Not Lie Within the Provision's
          Zone of Interests. ................................................................................ 16

II.   Plaintiffs' Claims Under 49 U.S.C. § 5309 are Subject to Dismissal For Additional
      Reasons ............................................................................................... 18

      A.  FTA Did Not Violate Section 5309 By Executing the FFGA Before Completing the
          Supplemental EIS Ordered by this Court................................................. 19

      B.  FTA Was Not Required to Make Findings Regarding WMATA's Finances ........... 20

III.  Plaintiffs Second Claim is Barred by the Doctrines of Claim and Issue Preclusion the
      Statute of Limitations, and/or Fails to State a Claim Because it Does Not Identify a Final
      Agency Action Reviewable Under the APA. ................................................. 22

      A.  Plaintiffs are Barred by the Doctrines of Claim and Issue Preclusion From Re-
          Litigating Arguments That Were Raised, or Could Have Been Raised, in *Purple
          Line I.* 22

      B.  Plaintiffs' Claims Against the Record of Decision and Final Section 4(f)
          Determination are Barred By the Statute of Limitations. ................................... 25

C.   The Agencies' Post-ROD Actions to Implement the Purple Line Project Do Not
     Constitute a Final Agency Action Reviewable Under The APA..........................26

D.   Plaintiffs Fail to State a Claim as to the Non-Federal Projects Including the Bethesda
     Metro Station South Entrance and Relocation of the Bethesda Community
     Hardware and Paint Building...............................................................................27

CONCLUSION..............................................................................................................29

# TABLE OF AUTHORITIES

CASES

*Abhe & Svoboda, Inc. v. Chao,*
   508 F.3d 1052 (D.C. Cir. 2007)..................................................................... 12, 28

*Adler v. Lewis,*
   675 F.2d 1085 (9th Cir. 1982) ............................................................................ 29

*Allen v. McCurry,*
   449 U.S. 90 (1980).............................................................................................. 23

*Am. Historical Ass'n v. Nat'l Archives & Records Admin.,*
   516 F. Supp. 2d 90 (D.D.C. 2007)...................................................................... 12

*Am. Nat'l Ins. Co. v. FDIC,*
   642 F.3d 1137 (D.C. Cir. 2011) ..................................................................... 10, 11

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009)............................................................................................ 11

*Ass'n of Data Processing Serv. Orgs. v. Camp,*
   397 U.S. 150 (1970)............................................................................................ 16

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007)......................................................................................... 8, 11

*Beverly Hills Unified Sch. Dist. v. Fed. Transit Admin.,*
   No. CV 12-9861-GW(SSX), 2016 WL 4650428 (C.D. Cal. Feb. 1, 2016)............ 25

*Biodiversity Conservation All. v. U.S. Bureau of Land Mgmt.,*
   404 F. Supp. 2d 212 (D.D.C. 2005) ...................................................................... 6

*Biton v. Palestinian Interim Self–Gov't Auth.,*
   310 F. Supp. 2d 172 (D.D.C.2004)...................................................................... 10

*Blue Ridge Envtl. Def. League v. Nuclear Regulatory Comm'n,*
   716 F.3d 183 (D.C. Cir. 2013)............................................................................... 5

*Byrum v. Winter,*
   783 F.Supp.2d 117 (D.D.C. 2011) ...................................................................... 11

*Clarke v. Sec. Indus. Ass'n,*
   479 U.S. 388 (1987)............................................................................................ 17

*Cmty. Fin. Servs. Ass'n of Am., Ltd. v. Fed. Deposit Ins. Corp.,*
   132 F. Supp. 3d 98 (D.D.C. 2015)...................................................................... 18

*Coal. for Underground Expansion v. Mineta*,
    333 F.3d 193 (D.C. Cir. 2003) ........................................................... 11

*Comm'n*,
    432 U.S. 333 (1977) ........................................................................ 13

*Davis v. Latschar*,
    202 F.3d 359 (D.C. Cir. 2000) ........................................................... 22

*Drake v. FAA*,
    291 F.3d 59 (D.C. Cir. 2002) ....................................................... 23, 24

*Eason Land Co. v. U.S. Dep't of the Interior*,
    No. 15-35641, 2017 WL 2889177 (9th Cir. July 7, 2017) ..................... 26

*Elk Grove Unified Sch. Dist. v. Newdow*,
    542 U.S. 1 (2004) ........................................................................... 14

*Felter v. Salazar*,
    679 F.Supp.2d 1 (D.D.C. 2010) ......................................................... 23

*Food & Water Watch, Inc. v. Vilsack*,
    808 F.3d 905 (D.C. Cir. 2015) ........................................................... 13

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
    528 U.S. 167 (2000) ........................................................................ 12

*Griggs v. Provident Consumer Disc. Co.*,
    459 U.S. 56 (1982) ......................................................................... 20

*Hazardous Waste Treatment Council v. EPA*,
    861 F.2d 277 (D.C. Cir. 1988) ..................................................... 17, 18

*Hein v. Freedom From Religion Found., Inc.*,
    551 U.S. 587 (2007) ........................................................................ 14

*Hemphill v. Kimberly-Clark Corp.*,
    530 F. Supp. 2d 108 (D.D.C. 2008) ...................................................... 8

*Herbert v. Nat'l Acad. of Scis.*,
    974 F.2d 192 (D.C. Cir. 1992) ........................................................... 11

*Hispanic Affairs Project v. Perez*,
    206 F. Supp. 3d 348 (D.D.C. 2016) ..................................................... 17

*I.A.M. Nat. Pension Fund, Ben. Plan A v. Indus. Gear Mfg. Co.*,
    723 F.2d 944 (D.C. Cir. 1983) ..................................................... 23, 25

*Indian River Cty. v. Rogoff*,
   201 F. Supp. 3d 1 (D.D.C. 2016)...................................................................................... 17

*Jerome Stevens Pharm., Inc. v. FDA*,
   402 F.3d 1249 (D.C. Cir. 2005)...................................................................................... 11

*Juergens v. Urban Title Servs., Inc.*,
   246 F.R.D. 4 (D.D.C. 2007).............................................................................................. 8

*Lewis v. Casey*,
   518 U.S. 343 (1996)........................................................................................................ 12

*Lewis v. Drug Enf't Admin.*,
   777 F. Supp. 2d 151 (D.D.C. 2011).............................................................................. 23

*Lexmark*,
   134 S. Ct. ........................................................................................................................ 17

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992)............................................................................................... passim

*Lujan v. Nat'l Wildlife Fed'n*,
   497 U.S. 871 (1990)................................................................................................. 16, 17

*Macharia v. United States*,
   334 F.3d 61 (D.C.Cir.2003)............................................................................................ 11

*Marsh v. Or. Nat. Res. Council*,
   490 U.S. 360 (1989)..................................................................................................... 5, 6

*Marshall Cty. Health Care Auth. v. Shalala*,
   988 F.2d 1221 (D.C. Cir. 1993)...................................................................................... 12

*Martin v. Dep't of Justice*,
   488 F. 3d 446 (D.C. Cir. 2007)...................................................................................... 25

*Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*,
   567 U.S. 209 (2012)........................................................................................................ 16

*Mayo v. Reynolds*,
   No. 16-5282, 2017 WL 5146111 (D.C. Cir. Nov. 7, 2017).............................................. 26, 27

*Nixon v. Richey*,
   513 F.2d 430 (D.C.Cir.1975)........................................................................................... 24

*Norton v. S. Utah Wilderness*,
   *All.*, 542 U.S. 55 (2004).................................................................................................. 6

*Page v. United States,*
   729 F.2d 818 (D.C. Cir. 1984) ..................................................................... 24

*Parkridge 6, LLC v. U.S. Dep't of Transp.,*
   420 F. App'x 265 (4th Cir. 2011) ................................................................. 14

*Rapid Transit Advocates, Inc. v. S. Cal. Rapid Transit Dist.,*
   752 F.2d 373 (9th Cir. 1985) ........................................................... 4, 14, 18

*Robertson v. Methow Valley Citizens Council,*
   490 U.S. 332 (1989) ....................................................................................... 5

*San Juan Audubon Soc'y v. Veneman,*
   153 F. Supp. 2d 1 (D.D.C. 2001) ................................................................. 29

*Sierra Club v. Morton,*
   405 U.S. 727 (1972) ..................................................................................... 17

*Sierra Club v. U.S. Army Corps of Eng'rs,*
   803 F.3d 31 (D.C. Cir. 2015) ....................................................................... 29

*Simon v. E. Ky. Welfare Rights Org.,*
   426 U.S. 26 (1976) ................................................................................. 14, 15

*Smalls v. United States,*
   471 F.3d 186 (D.C. Cir. 2006) ..................................................................... 23

*Texaco, Inc. v. Hickel,*
   437 F.2d 636 (D.C. Cir. 1970) ..................................................................... 23

*Theodore Roosevelt Conservation P'ship v. Salazar,*
   605 F. Supp. 2d 263 (D.D.C. 2009) ............................................................... 6

*Theodore Roosevelt Conservation P'ship v. Salazar,*
   616 F.3d 497 (D.C. Cir. 2010) ....................................................................... 5

*Thomas v. Principi,*
   394 F.3d 970 (D.C. Cir. 2005) ..................................................................... 10

*Trudeau v. Fed. Trade Comm'n,*
   456 F.3d 178 (D.C. Cir. 2006) ............................................................... 27, 29

*United States v. Nordic Vill. Inc.,*
   503 U.S. 30 (1992) ....................................................................................... 29

*Vill. of Bald Head Island v. U.S. Army Corps of Eng'rs,*
   714 F.3d 186 (4th Cir. 2013) ....................................................................... 26

*Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.,*
   435 U.S. 519 (1978)...................................................................................... 5

*Warth v. Seldin,*
   422 U.S. 490 (1975)...................................................................................... 14

*Wild Fish Conservancy v. Jewell,*
   730 F.3d 791 (9th Cir. 2013) ........................................................................ 26

*Winnebago Tribe of Neb. v. Ray,*
   621 F.2d 269 (8th Cir.1980) ......................................................................... 29

*Wyoming v. U.S. Dep't of Agric.,*
   661 F.3d 1209 (10th Cir. 2011) .................................................................... 26

STATUTES

5 U.S.C. § 702............................................................................................... 2, 16

5 U.S.C. § 704.................................................................................................... 29

5 U.S.C. §§ 701-706 ........................................................................................ 6, 28

23 U.S.C. § 139(*l*)............................................................................................. 26

23 U.S.C. § 139(*l*)(1)........................................................................................ 25

42 U.S.C. § 4332(2)(C)................................................................................... 5, 29

42 U.S.C. § 4332(C)............................................................................................. 5

49 U.S.C. 5301.................................................................................................... 18

49 U.S.C. § 303(c) ............................................................................................... 9

49 U.S.C. § 5309.......................................................................................... passim

49 U.S.C. § 5309(a)............................................................................................ 15

49 U.S.C. § 5309(d)(2)(A)................................................................................. 19

49 U.S.C. § 5309(f)(1)........................................................................................ 20

49 U.S.C. § 5309(k)(2)(A)................................................................................... 4

49 U.S.C. § 5309(k)(5) ...................................................................................... 10

54 U.S.C. § 306108.............................................................................................. 9

RULES

Fed. R. Evid. 201 ................................................................................................................ 28

Federal Rule of Civil Procedure Rule 12(b)(1) .................................................... iv, 10, 11

Federal Rule of Civil Procedure Rule 12(b)(6) .................................................... iv, 10, 11

REGULATIONS

23 C.F.R. § 771.130 ...................................................................................................... 6, 29

40 C.F.R. § 1501.3 ............................................................................................................. 6

40 C.F.R. § 1508.18 ......................................................................................................... 38

49 C.F.R. § 611.101(a) ...................................................................................................... 4

49 C.F.R. §§ 611.203-611.205 .......................................................................................... 4

## INTRODUCTION

The Purple Line is a 16.2-mile light rail transit project in Montgomery and Prince George's Counties, Maryland, which will provide a much-needed east-west corridor between the New Carrolton Metro station in Prince George's County and the Bethesda Metro station in Montgomery County to serve the area's growing transportation needs.  Plaintiffs in this action raise two claims challenging the implementation of funding for the Purple Line.  First, Plaintiffs contend that the Federal Transit Administration ("FTA"), in executing the Full Funding Grant Agreement ("FFGA") for the Purple Line, violated 49 U.S.C. § 5309 ("Section 5309") and the Administrative Procedure Act ("APA").  *See* Comp. for Injunctive & Declaratory Relief, ¶¶ 85-88, 90-91, ECF No. 1 ("Complaint").  Second, Plaintiffs argue that FTA violated the National Environmental Policy Act ("NEPA") and the APA (and a myriad of other federal laws), both by failing to supplement the Final Environmental Impact Statement ("FEIS") as a result of "new" information in two "submissions" they made over the past year, and by failing to properly implement the mitigation measures contained in FTA's Record of Decision ("ROD").  *See id.* ¶¶ 92-99.

Plaintiffs' claims are jurisdictionally and substantively deficient, and should be dismissed.  With respect to their Section 5309 claim, Plaintiffs cannot demonstrate that they have Article III standing to challenge the FFGA.  Plaintiffs' primary standing theory is that they are users of the Washington Metropolitan Area Transit Authority ("WMATA") Metrorail system and other regional transit systems, and will be injured because funding the Purple Line somehow weakens those existing systems.  These claimed injuries are uncertain and speculative, at best, and are shared by a large portion of the population; they are not the type of "concrete and particularized" and "actual or imminent" injuries that confer standing under Article III.  *See* Mem. Order 4, ECF No. 28 ("PI Order") (holding that Plaintiffs were unlikely to succeed in

showing that their "threatened Metrorail-ridership injuries" confer standing).  Nor are Plaintiffs'

claimed injuries fairly traceable to execution of the FFGA or redressable by this Court.  Plaintiffs

present no evidence that execution of the FFGA caused a decline in ridership on WMATA, nor

could this "harm" be cured if the Court were to unwind the executed contract.  As the Court has

recognized, there is nothing preventing the State of Maryland from using other funding sources

to proceed with the project on its own accord.  And the federal funds approved and appropriated

by Congress for construction of the Purple Line would not be diverted to WMATA if the FFGA

was somehow retracted.  Plaintiffs simply cannot carry their burden to demonstrate they have

Article III standing to advance their Section 5309 claim.  *See Lujan v. Defs. of Wildlife*, 504 U.S.

555, 560-61 (1992)).

Even if Plaintiffs had Article III standing, they still could not pursue their Section 5309

claim, because they cannot demonstrate they are "aggrieved by agency action within the

meaning" of the Federal Transit Act as required by the APA.  5 U.S.C. § 702.  Section 5309's

requirements are intended to benefit grant recipients and ensure that funding allocated for

qualifying projects goes to the most meritorious projects; they are not intended to allow those

claiming to be injured by a project to challenge the project's eligibility for federal funds.

Plaintiffs' claim falls outside the zone of interests of Section 5309, and accordingly must be

dismissed.  In any event, those claims fail on the merits as a matter of law:  Section 5309 did not

require FTA to complete the SEIS process before executing the FFGA, and did not require FTA

to examine the financial situation of the WMATA system.

Plaintiffs' next claim—that FTA was required to prepare a supplemental Environmental

Impact Statement ("SEIS") on the basis of their submission of March 2, 2017 and litigation

declarations (collectively "the Submissions")—fails for the simple reason that their submissions

did not actually reference any new information.  Plaintiffs contend that they are only raising in

the instant case, issues not previously litigated in *Friends of the Capital Crescent Trail v. FTA*

("*Purple Line I*"), No. 1:14-cv-01471-RJL (D.D.C.), but instead, Plaintiffs merely presented

many issues that could have been raised—and *were* raised—in the NEPA public participation

process that culminated in the ROD and then in the *Purple Line I* litigation.  Because the

submitted information is not new, and because FTA did consider similar submissions in the

original NEPA process or in response to prior supplementation requests as discussed in *Purple

Line I*, FTA is not required to prepare an SEIS.  Plaintiffs' supplementation claims are barred by

the doctrines of claim and issue preclusion and by the statute of limitations.  And to the extent

Plaintiffs' claims are based on information about construction activities that are not even part of

the Purple Line project, those allegations do not state a claim against FTA.

Federal Defendants respectfully request the Court to dismiss Plaintiffs' Complaint in its

entirety for lack of subject matter jurisdiction under Federal Rule of Civil Procedure ("Rule")

12(b)(1) and/or failure to state a claim under Rule 12(b)(6).

## STATUTORY BACKGROUND

## I.    Federal Transit Act.

The Urban Mass Transportation Act of 1964 ("Federal Transit Act"),[1] Pub. L. No. 88-

365, 78 Stat. 302 (codified as amended at 49 U.S.C. §§ 5301-5330, 5332-38, 10531),[2]

---

[1] Plaintiffs mistakenly reference the Federal-Aid Highway Act or "FHA", *see* Compl. ¶¶ 1, 20-29, when referring to both Section 4(f) of the Department of Transportation Act and 49 U.S.C. Ch. 53.  *Id*. ¶¶ 21, 22.  In fact, the Purple Line project will not receive any funds from the Federal-Aid Highway Program, Act of Aug. 27, 1958, Pub. L. No. 85-767, 72 Stat. 885 (codified as amended at 23 U.S.C. §§ 101-170), and therefore, any references to the Program are inaccurate.

[2] The Federal Transit Act was codified at Title 49, Chapter 53 to the United States Code in 1994. Pub. L. No. 103-272, § 1(d), 108 Stat 745 (1994).

"authorizes the Secretary of Transportation to make grants or loans to assist states and local

agencies in financing the planning, development, construction and improvement of mass

transportation facilities." *Rapid Transit Advocates, Inc. v. S. Cal. Rapid Transit Dist.*, 752 F.2d

373, 375 (9th Cir. 1985) (per curiam) (citing 49 U.S.C. § 1602(a)(1) (1982)).  Congress has

amended Chapter 53 through both long- and short-term transportation legislation that guides the

funding programs FTA administers.  Chapter 53 establishes FTA's funding authority and Section

5309 sets forth the Secretary of Transportation's authority and procedures for administering

"discretionary grants," for fixed guideway capital investments.[3]

 FTA administers the Capital Investment Grant program in Chapter 53 to support locally

planned and operated transit projects.  *See* 49 U.S.C. § 5309; 49 C.F.R. § 611.101(a).  Under

Section 5309, FTA evaluates and rates proposed major transit capital investments against

specific statutory criteria to ensure that the projects merit funding and that prospective grant

recipients are both technically and financially able to implement the project.  49 U.S.C. § 5309;

49 C.F.R. §§ 611.203-611.205.  FTA provides federal funding for new fixed guideway projects

by executing, with the project proponent, an FFGA.  49 U.S.C. § 5309(k)(2)(A) ("A new fixed

guideway capital project or core capacity improvement project shall be carried out through a full

funding grant agreement."), which establishes "the terms of participation by the Government in a

new fixed guideway capital project or core capacity improvement project." *Id.* §

5309(k)(2)(C)(i).

## II. National Environmental Policy Act.

 NEPA serves the dual purpose of informing agency decision-makers of the significant

---

[3] Section 5309 was amended most recently in 2012, when it was revised to its current form by
the Moving Ahead For Progress in the 21st Century Act ("MAP-21"), Pub. L. No. 112-141, Div.
B, § 20003, July 6, 2012, 126 Stat 405, 622 (2013); *see generally* Fed. Defs.' Opp'n to Pls.' Mot.
for a TRO 3-6, ECF No. 6 ("TRO Opp'n").

environmental effects of proposed major federal actions and ensuring that relevant information is

made available to the public so that they "may also play a role in both the decisionmaking

process and the implementation of that decision."  *See Robertson v. Methow Valley Citizens*

*Council*, 490 U.S. 332, 349 (1989); *see also Theodore Roosevelt Conservation P'ship v. Salazar*,

616 F.3d 497, 503 (D.C. Cir. 2010) ("It is an 'essentially procedural' statute, meant to ensure 'a

fully informed and well-considered decision, not necessarily' the best decision." (quoting *Vt.*

*Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*, 435 U.S. 519, 558 (1978)).  To

meet these dual purposes, NEPA requires that an agency prepare an Environmental Impact

Statement ("EIS") for "major Federal actions significantly affecting the quality of the human

environment."  42 U.S.C. § 4332(2)(C); 40 C.F.R. § 1501.3.  An EIS should take a "hard look"

at the impacts of the proposed action and compare the proposal to other reasonable alternatives.

*Theodore Roosevelt Conservation P'ship*, 616 F.3d at 503; 42 U.S.C. § 4332(C)).

Under NEPA, FTA is required to prepare supplemental analysis "only when presented

with 'substantial changes in the proposed action that are relevant to environmental concerns' or

'new and significant circumstances or information relevant to environmental concerns and

bearing on the proposed action or its impacts' after the EIS is assembled."  *Blue Ridge Envtl.*

*Def. League v. Nuclear Regulatory Comm'n*, 716 F.3d 183, 196 (D.C. Cir. 2013) (quoting 10

C.F.R. § 51.92(a)(1)-(2)); *see also* 40 C.F.R. § 1502.9(c)(1)(i)-(ii); 23 C.F.R. § 771.130.  "[A]n

agency need not supplement an EIS every time new information comes to light after the EIS is

finalized.  To require otherwise would render agency decisionmaking intractable, always

awaiting updated information only to find the new information outdated by the time a decision is

made."  *Marsh v. Or. Nat. Res. Council*, 490 U.S. 360, 373 (1989).   The agency, however, must

take a "hard look" at the proposed impacts and then the "rule of reason" guides whether

supplemental analysis is necessary.  *See id.* at 373-74.

A court's review of an agency's NEPA compliance is limited.  *Theodore Roosevelt Conservation P'ship v. Salazar*, 605 F. Supp. 2d 263, 271 (D.D.C. 2009), *aff'd*, 616 F.3d 497 (D.C. Cir. 2010).  Its role is to determine "whether the decision was based on a consideration of the relevant factors and whether there has been a clear error in judgment."  *Id.* (quoting *Biodiversity Conservation All. v. U.S. Bureau of Land Mgmt.,* 404 F. Supp. 2d 212, 216 (D.D.C. 2005) (internal quotation marks omitted)).

## III.   Administrative Procedure Act.

The APA, 5 U.S.C. §§ 701-706, provides that "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review."  *Id.* § 704.  Section 706(2) authorizes a reviewing court to set aside final agency action found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  *Id.* § 706(2)(A).  "The APA provides relief for a failure to act in § 706(1): 'The reviewing court shall . . . compel agency action unlawfully withheld or unreasonably delayed.'"  *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 62 (2004) (quoting 5 U.S.C. § 706(1)).  However, "the only agency action that can be compelled under the APA is action legally required."  *Id.* at 63(emphasis omitted).  "Thus, a claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take."  *Id.* at 64 (emphasis in original).

## FACTUAL AND PROCEDURAL BACKGROUND

The history of the *Purple Line I* litigation was fully summarized in Federal Defendants' opposition to Plaintiffs' application for a temporary restraining order, TRO Opp'n 6-8, and will not be repeated here.  The 16.2-mile light rail transit project, which will transport the public between the New Carrolton Metro station in Prince George's County and the Bethesda Metro

station in Montgomery County, is a critical component of the region's transportation infrastructure.  Nor is it duplicative; the existing WMATA Metro system primarily serves passengers travelling in a north-south orientation to and from Washington D.C.  The Purple Line, in contrast, is designed to provide faster, more direct, and more reliable east-west transit service.

On March 2, 2017, Plaintiffs—whose prior lawsuit was at that time before this Court on fully-briefed renewed summary judgment motions—submitted a letter with numerous exhibits to the Secretary of Transportation ("March 2 Submission") that questioned the wisdom of funding the Project and argued that FTA must prepare an SEIS based on the following nine identified concerns:  (1) WMATA ridership and economics; (2) the Purple Line's alleged inconsistency with county land use plans; (3) a bald assertion that "EIS process failed to consider" environmental justice concerns; (4) whether impact of the Bethesda Metro Station South Entrance water appropriation application were sufficiently assessed; (5) the Purple Line's compliance with the Clean Water Act, Endangered Species Act, and other laws; (6) whether relocation of the Wilson Store violates Section 4(f); (7) whether the Trail closures violate Section 4(f); (8) whether impacts on migratory birds violates the Migratory Bird Treaty Act; and (9) the agency's consideration of "[r]evolutionary changes in transportation technology over the past near decade" including ride-share technologies such as Uber and Lyft and "self-driving" vehicles.  Letter from Ajay Bhatt to Secretary Elaine Chao (March 2, 2017), (attached as Ex. 2); *see also Purple Line I*, ECF No. 147-1 at 16-32 (same); Exs. 3-24 (exhibits to March 2, 2017 letter); Compl. ¶¶ 46, 51-52, 62-64, 71-76, 78-81.

Plaintiffs' Complaint does not explain or define what their "June Submission," comprises, but on June 8, 2017, in their opposition to the State of Maryland's request to stay this Court's judgment in *Purple Line I*, Plaintiffs filed six litigation declarations ("Litigation

Declarations" or "June Submission")[4] by Plaintiffs, purported "experts," and non-party

individuals for the express purpose of supporting their claimed irreparable harm and their

argument that continuing vacatur of the ROD was in the public interest. *See Purple Line I*, Pls.'

Opp'n to State of Md.'s Mot. for Stay Pending Appeal & Reinstatement of ROD, ECF No. 147

at 18 ("Along with this opposition, Plaintiffs are submitting yet another Declaration[, ECF No.

147-1,] documenting the myriad "'irreparable injuries that the Plaintiffs would face and the

harmful consequences for the public if the stay requested by Maryland is granted and the [ROD]

is reinstated." (quoting Decl. of Christine Real de Azua ¶ 3, ECF No. 147-1 (second alteration in

original))); *id.* at 21 n.15 (explaining the Litigation Declarations, *Purple Line I*, ECF Nos. 147-2-

147-3 (attached as Exs. 25-26), were submitted in support of Plaintiffs' argument that the public

interest was served by leaving the ROD vacated); *see also* Compl. ¶¶ 53-54, 67-70, 77.  Federal

Defendants presume that these litigation declarations are the "June Submission."  The litigation

declarations were never submitted to FTA for its consideration (other than filing them on the

Court's docket) and Plaintiffs never requested the agency to prepare an SEIS based on the

information they contain.[5]  *But see* Compl. ¶ 66 ("On June 8, 2017, Plaintiffs filed and *provided*

---

[4] In their Complaint, Plaintiffs reference, but do not attach, a myriad of documents including the
March 2 Submission and the Litigation Declarations, which are included here for the Court's
convenience.  *See Juergens v. Urban Title Servs., Inc.*, 246 F.R.D. 4, 10 (D.D.C. 2007) (noting
the Court may consider "any documents . . . incorporated in the complaint" in resolving a Rule
12(b)(6) motion); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 569 n.13 (2007) ("[T]he District
Court was entitled to take notice of the full contents of the published articles referenced in the
complaint, from which the truncated quotations were drawn." (citing Fed. Rule Evid. 201));
*Hemphill v. Kimberly-Clark Corp.*, 530 F. Supp. 2d 108, 111 (D.D.C. 2008), aff'd, 335 F. App'x
964 (Fed. Cir. 2008) ("A court may take judicial notice of public records from other
proceedings." (citations omitted)).  By including these documents as exhibits, however, FTA
does not concede that they are properly part of any Administrative Record that would be the sole
basis for judicial review in this litigation.

[5] Plaintiffs also refer to the "July 2017 analysis," Compl. ¶ 56-59, that Federal Defendants are
unable to identify.  In the *Purple Line I* litigation, Dr. Lysy submitted three declarations: (1)

*to Defendants* a series of new declarations which together demonstrated newly disclosed harms

and risks that would cause irreparable harm to Plaintiffs if the Project were allowed to proceed

without addressing these concerns (the June Submission)." (emphasis added)).  At any rate, as

discussed below, the declarations offered nothing new and therefore triggered no requirement to

prepare an SEIS.

In the six litigation declarations, Plaintiff, Christine Real de Azua, makes allegations

regarding Plaintiffs' alleged injury from the Purple Line project proceeding and attaches the

March 2, 2017 letter, *Purple Line I*, ECF No. 147-1; Mr. Heard explains that he also asked for

FTA to prepare an SEIS based on his opinion that the Purple Line is inconsistent with county

land use goals and undermines WMATA's regional transportation services, *Purple Line I*, ECF

No. 147-2; Mr. MacGlashan again (as he did in the *Purple Line I* litigation) opines on the

sufficiency of the FEIS's analysis of noise and the impact of eliminating the "green track"

requirement, ECF No. 147-3; Mr. Nixon alleges FTA violated Section 4(f) of the Department of

Transportation Act, 49 U.S.C. § 303(c), and Section 106 consultation requirements under the

National Historic Preservation Act ("NHPA"), 54 U.S.C. § 306108, relating to the relocation of

the Bethesda Community Paint and Hardware Store building, *Purple Line I*, ECF No. 147-4

(attached as Ex. 27); Mr. Bickerman criticizes project implementation on issues ranging from

geotechnical borings to management of hazardous materials, *Purple Line I*, ECF No. 147-5

(attached as Ex. 28); and Dr. Manville revised his declaration submitted in the prior case, *Purple

Line I*, ECF No. 49-1, on the Project's impact to migratory birds.  *Purple Line I*, ECF Nos. 147-

---

Decl. of Frank J. Lysy, dated September 30, 2015 (attached as Ex. 30); (2) Decl. of Frank J.
Lysy, *Purple Line I*, ECF No. 100-1 (attached as Ex. 31); and (3) Second Decl. of Frank J. Lysy
dated January 4, 2017, *Purple Line I*, ECF No. 119-1 (attached as Ex. 32).  Federal Defendants
have not received any submission from Dr. Lysy that corresponds with Plaintiffs' allegations that
there is a "July 2017 analysis."

1-147-6.

On August 22, 2017, FTA and the MTA executed the FFGA for the Purple Line project. *See* ECF No. 6-1.  Six days later, the agencies held a public signing ceremony at the site of a future Purple Line maintenance facility in Prince George's County.  FTA had previously notified Congress on July 6, 2016, pursuant to 49 U.S.C. § 5309(k)(5), of its intention to execute an FFGA with MTA.  *See* ECF No. 6-2.

On September 5, 2017, Plaintiffs moved the Court for a temporary restraining order, Mot. for TRO, ECF No. 2, followed by an application for preliminary injunctive relief.  Mot. for Prelim. Inj., ECF No. 18.  After the parties fully briefed Plaintiffs' motions and the Court twice held oral argument, the Court denied Plaintiffs' motion.  PI Order 5; *see also* Sept. 8, 2017 Order, ECF No. 14.

## STANDARD OF REVIEW

### I.      Federal Rule of Civil Procedure Rule 12(b)(1)

Federal Rule of Civil Procedure Rule 12(b)(1) allows a party to move to dismiss "for lack of subject-matter jurisdiction."  Fed. R. Civ. P. 12(b)(1).  When a defendant moves to dismiss under Rule 12(b)(1), "the plaintiff[] bear[s] the burden of proving by a preponderance of the evidence that the Court has subject[-]matter jurisdiction."  *Biton v. Palestinian Interim Self–Gov't Auth.*, 310 F. Supp. 2d 172, 176 (D.D.C.2004); *see also Lujan*, 504 U.S. at 560-61.  A court considering a Rule 12(b)(1) motion must "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting [a] plaintiff the benefit of all inferences that can be derived from the facts alleged.'"  *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005).  But a "court must give [a] plaintiff's factual allegations closer scrutiny when resolving a Rule 12(b)(1) motion than would be required for a Rule 12(b)(6) motion for failure to state a

claim." *Byrum v. Winter*, 783 F.Supp.2d 117, 122 (D.D.C. 2011) (citing *Macharia v. United States*, 334 F.3d 61, 64, 69 (D.C.Cir.2003)). And "[a]lthough 'the District Court may in appropriate cases dispose of a motion to dismiss for lack of subject[-]matter jurisdiction under Fed. R. Civ. P. 12(b)(1) on the complaint standing alone,' 'where necessary, the court may consider the complaint supplemented by undisputed facts evidenced in the record . . . .'" *Coal. for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (quoting *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992)). Finally, in determining whether it has jurisdiction, the Court "may consider materials outside the pleadings . . . ." *Jerome Stevens Pharm., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

## II.    Federal Rule of Civil Procedure Rule 12(b)(6)

A Rule 12(b)(6) motion tests whether the complaint "state[s] a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). In considering a Rule 12(b)(6) motion, the Court affords the plaintiff the "benefit of all inferences that can be derived from the facts alleged." *Am. Nat'l Ins. Co.*, 642 F.3d at 1139 (internal quotations and citation omitted). A "sheer possibility that a defendant has acted unlawfully" fails to satisfy the facial-plausibility requirement. *Iqbal*, 556 U.S. at 678 (citation omitted). Rather, a claim is facially plausible "when the plaintiff pleads factual content that allows the [C]ourt to draw [a] reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). While the Court must "assume [the] veracity" of any "well-pleaded factual allegations" in the complaint, conclusory allegations "are not entitled to the assumption of truth." *Id.* at 679. "In determining whether a complaint states a claim, the [C]ourt may consider the facts alleged in the complaint, documents

attached thereto or incorporated therein, and matters of which it may take judicial notice." *Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007) (internal quotations omitted); *see also Am. Historical Ass'n v. Nat'l Archives & Records Admin.*, 516 F. Supp. 2d 90, 102 (D.D.C. 2007); *Marshall Cty. Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 n.6 (D.C. Cir. 1993).

## ARGUMENT

I.  **Plaintiffs' Challenge to the Full Funding Grant Agreement Under 49 U.S.C. § 5309 Should Be Dismissed Because They Lack Article III Standing to Raise the Claim and Plaintiffs Fall Outside the Zone of Interests of The Federal Transit Act.**

A.  **Plaintiffs Lack Article III Standing to Raise Their Claim Under 49 U.S.C. § 5309**

Because Plaintiffs' Section 5309 claims seek to have the "FFGA set aside," Compl. ¶ 1, they must first demonstrate that they have standing to seek that relief.  While Plaintiffs may have had standing in *Purple Line I* to assert NEPA claims as a predicate for remanding the FEIS and vacating the ROD—an assertion that Federal Defendants did not contest—that is not dispositive of the question here.  *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc*., 528 U.S. 167, 185 (2000) ("[A] plaintiff must demonstrate standing separately for each form of relief sought."); *Lewis v. Casey*, 518 U.S. 343, 358, n. 6 (1996) ("[S]tanding is not dispensed in gross.").  Plaintiffs must: (1) identify an injury that is "concrete and particularized" and "actual or imminent"; (2) demonstrate that the injury is "fairly traceable" to the execution of the FFGA; and (3) show that the injury can be redressed by a favorable decision here.  *See Lujan*, 504 U.S. at 560-61.  Plaintiffs cannot meet any of these requirements.

First, "[P]laintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Id.* at 560 (internal quotation marks and citations omitted).  Plaintiffs, perhaps recognizing that the aesthetic, environmental, and recreational injuries they alleged in *Purple*

*Line I* are far outside the relevant "zone of interests" for their Section 5309 claims (*see infra* Section I.B), now claim injuries stemming from the fact that they use existing regional transit systems.  Plaintiff, Christine Real de Azua, for example contends that she is "a public transit user, using the Metro system for trips in the area and downtown . . . ."  Compl. ¶ 7.  She further states that "the Project would . . . impair her ability to use a properly capitalized, maintained, and safely operating WMATA and regional transportation system."  *Id*. ¶ 8.  Similarly, Plaintiff, John Fitzgerald, claims that he "uses the WMATA Metrorail frequently and occasionally its buses as well as other elements of the region's public transit network."  *Id*. ¶ 13.  He contends that "[t]he project will impair [his] ability to use and rely on the WMATA system . . . ."  *Id*.  But those conclusory statements—that allege Plaintiffs *may someday* experience vaguely defined problems when using public transit—are mere speculation and do not meet the requirement for an "actual or imminent" injury.  *See Lujan*, 504 U.S. at 564 ("Such 'some day' intentions—without any description of concrete plans, or indeed even any specification of when the some day will be—do not support a finding of the "actual or imminent" injury that our cases require.").[6]

Moreover, Plaintiffs' alleged injuries related to the prospect of potential future problems with existing transit systems would be shared by every transit user, and are therefore not sufficiently "particularized."  *See Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 914 (D.C. Cir. 2015) ("A particularized injury is personal, individual, distinct, and differentiated—not generalized or undifferentiated." (citation omitted)).  To the extent Plaintiffs claim an injury

---

[6] Plaintiff, Friends of the Capital Crescent Trail, makes no attempt to set forth allegations supporting standing on the basis of its members' use of existing transit systems.  Nor could it, since it is a non-profit organization "dedicated to preserving parkland, open space, and quality of life in Montgomery County," Compl. ¶ 3, and an organization may only bring suit on behalf of its members when "the interests it seeks to protect are germane to the organization's purpose." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977).

from the government's purportedly improper allocation of fiscal resources, this "generalized grievance" problem is even more pronounced, and indeed shared equally by all taxpayers. *See Hein v. Freedom From Religion Found., Inc.*, 551 U.S. 587, 593 (2007) (discussing "the general rule against federal taxpayer standing"); *Rapid Transit Advocates*, 752 F.2d at 379 (rejecting challenge to the government's grant for a Los Angeles subway project under the Urban Mass Transportation Act, where plaintiffs did not "satisfy the requirements for taxpayer standing established in *Flast v. Cohen* . . . since they do not challenge the exercise of congressional power, but rather a decision by the executive branch." (citations omitted)); *Parkridge 6, LLC v. U.S. Dep't of Transp.*, 420 F. App'x 265, 268 (4th Cir. 2011) ("Whether or not the taxes and tolls associated with the Project are unnecessary, as the Appellants maintain, is not a particularized legal injury but a policy question of broad applicability.  We therefore find that these claims are 'more appropriately addressed in the representative branches.'" (quoting *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 12 (2004), *abrogated by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377 (2014)); *Parkridge 6, LLC*, 420 F. App'x at 267-68 (finding that appellants' alleged injuries from funding concerns "fall squarely within the prudential limitation on standing that courts refrain from exercising jurisdiction over a 'generalized grievance' shared in substantially equal measure by all or a large class of citizens.'" (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975))); *see also* TRO Opp'n 17-19.

"Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be 'fairly trace[able] to the challenged action of the defendant . . . .'" *Lujan*, 504 U.S. at 560 (quoting *Simon v. E. Ky. Welfare Rights Org.,* 426 U.S. 26, 41 (1976) (alterations in original)).  Plaintiffs fare no better here.  In addition to failing to demonstrate an injury in fact, Plaintiffs fail to show that execution of the FFGA caused their

alleged injury.  Even if considered in the most favorable light, Plaintiffs cannot link their alleged

injury—lacking "a properly capitalized, maintained, and safely operating WMATA and regional

transportation system," Compl. ¶ 8—to execution of the FFGA for MTA's Purple Line.  There is

simply no connection that is fairly traceable to FTA's action authorizing funding for the Purple

Line.  Plaintiffs' attempt to link the recent WMATA safety and ridership issues to execution of

the FFGA falls flat.  There is no evidence that funding the Purple Line FFGA caused incidents

on WMATA that long predated the document's execution.  The Congressionally appropriated

funds for the Purple Line were not taken from WMATA, and Mr. Fitzgerald's assertion that "the

WMATA system [is] competing for and by definition reducing funds and/or raising the price and

scarcity of the personnel, management, and material needed to repair, operate, and maintain [the

WMATA] system and the region's transportation network," *id*. ¶ 13, is simply wrong.  Section

5309 funds may not be redirected to WMATA to address any needed repairs.  *See, e.g.,* 49

U.S.C. § 5309(a) (noting that core capacity projects do "not include project elements designed to

maintain a state of good repair of the existing fixed guideway system.").  And FTA only can

obligate Section 5309 funds appropriated by Congress for fixed guideway projects that meet the

statute's requirements.  WMATA does not have any proposed projects for which it currently is

seeking a grant agreement under Section 5309,[7] and therefore, FTA would be prohibited from

obligating Section 5309 funds to WMATA for other capital projects that do not qualify.

　　　"Third, it must be 'likely,' as opposed to merely speculative, that the injury will be

redressed by a favorable decision."  *Lujan*, 504 U.S. at 561 (quoting *Simon*, 426 U.S. at 38, 43).

The State of Maryland is free to proceed with the project using other funding sources.  Thus,

---

[7] *See* Annual Report on Funding Recommendations: Fiscal Year 2018 Capital Investment Grant
Program (available at https://www.transit.dot.gov/sites/fta.dot.gov/files/docs/funding/grant-
programs/capital-investments/60771/fy18-annual-report_0.pdf.

vacating the FFGA would not make Plaintiffs' claimed fear—that Maryland will divert state money to the Purple Line that otherwise would have been used to support other rapid transit systems—any more likely to materialize.  Indeed, eliminating federal funding would just as likely make that scenario *more* likely.  And even if the Court were to somehow unwind the FFGA, the federal funds approved and appropriated by Congress for construction of the Purple Line, could under no circumstances be reprogrammed to WMATA to address the issues Plaintiffs complain of.  *See* Compl. ¶¶ 7-8, 13.  By the same token, vacating the ROD would not remedy the environmental and related injuries that Plaintiffs claim they will suffer from the construction of the Purple Line if the State of Maryland would build it in any event.

In sum, Plaintiffs' Section 5309 claim rests on threadbare, speculative, and conclusory allegations that mimic the statutory language, but are indeed gossamer-thin.  Plaintiffs have not met the "irreducible constitutional minimum of standing" to challenge the FFGA and their claim must be dismissed.  *See Lujan*, 504 U.S. at 560.

**B.      Plaintiffs' Section 5309 Claim Fails Because It Does Not Lie Within the Provision's Zone of Interests.**

The injuries the Plaintiffs identify not only fail to meet the constitutional minimum for Article III standing, they also do not fall within the "zone of interests" protected by Section 5309.  *See also* TRO Opp'n 14-17; Fed. Defs.' Opp'n to Pls.' Mot. for Prelim. Inj. 7-11, ECF No. 20 ("PI Opp'n").  Under the APA, to demonstrate that Plaintiffs have been adversely affected "within the meaning of a relevant statute," 5 U.S.C. § 702, "[t]he interest [they assert] must be arguably within the zone of interests to be protected or regulated by the statute that [they say] was violated."  *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 224 (2012) (quoting *Ass'n of Data Processing Serv. Orgs. v. Camp*, 397 U.S. 150, 153 (1970)); *see also Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 883 (1990) ("The plaintiff must

establish that the injury he complains of . . . falls within the 'zone of interests' sought to be

protected by the statutory provision whose violation forms the legal basis for his complaint.").

Although the zone of interest "test is not meant to be especially demanding," *Clarke v. Sec.*

*Indus. Ass'n*, 479 U.S. 388, 399 (1987), the test must still be met.  *See e.g., Indian River Cty. v.*

*Rogoff*, 201 F. Supp. 3d 1, 20-21 (D.D.C. 2016) (dismissing claim as outside the zone of interests

of the challenged provision that allows tax-exempt bonds for public infrastructure facilities,

explaining "[t]hat portion of the Internal Revenue Code has nothing to do with Martin County's

asserted interests, nor does it protect (or regulate) those who would claim that public safety or

other related interests would be impaired by a bond allocation to an ineligible project.");

*Hispanic Affairs Project v. Perez*, 206 F. Supp. 3d 348, 368 (D.D.C. 2016) (dismissing foreign

sheepherders' claims because they fell outside the zone of interest of the challenged statute,

which was intended to protect the interests of American workers)

The inquiry is "whether this particular class of persons has a right to sue under this

substantive statute." *Lexmark*, 134 S. Ct. at 1377, 1387 (internal quotations and alterations

omitted).  In the D.C. Circuit, to meet the zone-of-interests requirement a plaintiff must

demonstrate either (1) that it is an intended beneficiary of the statute that forms the basis of its

claim, or (2) that there is some other indication that it is a "peculiarly suitable challenger" to the

administrative action at issue.  *Hazardous Waste Treatment Council v. EPA*, 861 F.2d 277, 283

(D.C. Cir. 1988) (per curiam).  Plaintiffs bear the burden of alleging "specific facts"

demonstrating that they have satisfied Section 702 of the APA.  *Lujan,* 497 U.S. at 884-85 ("The

burden is on the party seeking review under § 702 to set forth specific facts (even though they

may be controverted by the Government) showing that he has satisfied its terms." (citing *Sierra*

*Club v. Morton*, 405 U.S. 727, 740 (1972)).

Plaintiffs' allegations are insufficient on their face to meet this mandate when measured against the relevant statutory language.  First, Section 5309's directives focus "not on the substantive rights of local residents but rather on the obligations of the [grant] applicants and the Secretary.  They are primarily spending directives to the Secretary of Transportation, specifying conditions under which grants may be made."  *Rapid Transit Advocates*, 752 F.2d at 377.  There is no evidence that Congress intended environmental groups and individuals such as Plaintiffs as the "beneficiaries" of Section 5309.  *See* 49 U.S.C. 5301; *see also* TRO Opp'n 14-17; PI Opp'n 7-11.

Second, Plaintiffs make no attempt to establish that they are "peculiarly" suited to challenge FTA's discretionary grant of funds for the Purple Line under Section 5309.  They certainly could not gain that status as public transit users—as opposed to entities that actually construct and operate transit systems.  *See Hazardous Waste Treatment Council*, 861 F.2d at 283.

Plaintiffs cannot satisfy the APA's requirement that they have been adversely affected within the meaning of the Section 5309 and their claims fall outside the zone of interests.  Thus, Plaintiffs fail to state a claim and the Court should dismiss Plaintiffs' Section 5309 claim under Rule 12(b)(6).  *See Cmty. Fin. Servs. Ass'n of Am., Ltd. v. Fed. Deposit Ins. Corp.*, 132 F. Supp. 3d 98, 117 (D.D.C. 2015) ("[T]he Supreme Court ruled that the zone of interests test is now considered a merits issue, in which the court asks whether the plaintiff has a cause of action under the statute." (internal quotation marks and citations omitted)).

## II.     Plaintiffs' Claims Under 49 U.S.C. § 5309 are Subject to Dismissal For Additional Reasons

Even if Plaintiffs could somehow avoid the standing and "zone of interests" problems discussed above, their Section 5309 claims would still be subject to dismissal under Rule 12(b)(6).

A. **FTA Did Not Violate Section 5309 By Executing the FFGA Before Completing the Supplemental EIS Ordered by this Court**

Plaintiffs contend that FTA violated Section 5309 by executing the FFGA before completing the SEIS ordered by this Court in *Purple Line I*. Compl. ¶ 85. This claim does not entitle Plaintiffs to relief. Section 5309 permits the findings required for execution of an FFGA to be made "upon completion of activities required under [NEPA], as demonstrated by a [ROD]." 49 U.S.C. § 5309(d)(2)(A). Once the ROD was reinstated, FTA was permitted to execute the FFGA; nothing in Section 5309 required FTA to await the completion of an SEIS prior to executing an FFGA. While Plaintiffs claim that FTA argued otherwise in *Purple Line I*, *see* Compl. ¶ 85, that is simply not true. In that case, FTA rebutted Plaintiffs' claim that FTA was required to make Section 5309 findings in the ROD itself, by explaining that Section 5309 requires findings *after* the completion of the NEPA process. As to *when* the NEPA process is complete for purposes of Section 5309, FTA took the exact same position it does now: "[t]he ROD . . . represent[ed] the culmination of the NEPA process." *Purple Line I*, ECF No. 61, at 15; *see also Purple Line I*, ECF No. 62, at 14 (Maryland brief noting that "a record of decision, or any other NEPA decision document, ends the NEPA process.").

In any event, to the extent this Court's SEIS orders prohibited FTA from executing an FFGA, the D.C. Circuit stayed that prohibition. When Maryland sought a stay reinstating the ROD pending appeal, its showing of irreparable harm was based on the consequences of a delay in the execution of the FFGA. Appellant's Emergency Mot. for Stay Pending Appeal and Reinstatement of the ROD at 15-18, *Friends of the Capital Crescent Trail v. FTA* ("*Purple Line I Appeal*"), No. 17-5132 (D.C. Cir. June 21, 2017). All parties recognized that "[t]he stay would allow FTA to proceed with issuing the grant that has been delayed for nearly a year." *Id.* at 19; *see also* Pls.-Appellees' Combined Opp'n to State of Md.'s Mot. for Stay Pending Appeal and

Reinstatement of the ROD, and Pls.' Mot. to Dismiss at 24-26 *Purple Line I* Appeal, (D.C. Cir.

July 3, 2017) (arguing that reinstating the ROD would cause them irreparable injury by allowing

the project to proceed).  This Court itself recognized, when considering Maryland's request to

reinstate the ROD pending appeal, that "the issue [was] whether . . . the State should obtain

federal funding . . . to go forward with irreversible project construction now, while critical NEPA

analysis remains incomplete.").  *Purple Line I*, ECF No. 152 at 12.  Thus, when the D.C. Circuit

reinstated the ROD, it intended to permit the FFGA to go forward.  Indeed, the D.C. Circuit

described the "injunctive relief" it was staying as having "the direct and intended effect of

preventing the use of federal funds and halting the project."[8]

## B.     FTA Was Not Required to Make Findings Regarding WMATA's Finances

Plaintiffs next assert that because the *WMATA* system has reportedly been suffering from

financial problems, FTA's execution of the FFGA for the *Purple Line* must have violated 49

U.S.C. § 5309(f)(1).  Compl. ¶ 86.  This claim should be dismissed, because Section

5309(f)(1)(C) did not require any examination into WMATA's financing.  Plaintiffs' claim is

based on a misinterpretation of the statute.  Section 5309(f)(1) provides in full that:

> In determining whether a project is supported by an acceptable degree of local
> financial commitment and shows evidence of stable and dependable financing
> sources for purposes of subsection (d)(2)(A)(v) or (e)(2)(A)(v), the Secretary shall
> require that—

---

[8] Relatedly, as the Court recognized in denying Plaintiffs' preliminary injunction motion,
Plaintiffs' argument "assumes the validity of this Court's prior decision ordering an [SEIS]," and
thus has a "great" amount of "overlap" with the pending *Purple Line I* appeal.  PI Order at 3.
This Court is therefore divested of jurisdiction to consider this claim.  *See Griggs v. Provident
Consumer Disc. Co.*, 459 U.S. 56, 58 (1982) (per curiam) (filing a notice of appeal "confers
jurisdiction on the court of appeals and divests the district court of its control over those aspects
of the case involved in the appeal"); *see also Purple Line I*, ECF No. 167 (denying, for lack of
jurisdiction, "motion to enforce" that argued that FFGA could not be executed before completion
of SEIS).

**(A)** the proposed project plan provides for the availability of contingency amounts that the Secretary determines to be reasonable to cover unanticipated cost increases or funding shortfalls;

**(B)** each proposed local source of capital and operating financing is stable, reliable, and available within the proposed project timetable; and

**(C)** local resources are available to recapitalize, maintain, and operate the overall existing and proposed public transportation system, including essential feeder bus and other services necessary to achieve the projected ridership levels without requiring a reduction in existing public transportation services or level of service to operate the project.

In order to argue that WMATA's finances are relevant, Plaintiffs seize on the reference in subparagraph (C) to the resources available to "the overall existing and proposed public transportation system." But that language is included solely as part of a broader inquiry into whether the "*project* is supported by an acceptable degree of local financial commitment and shows evidence of stable and dependable financing sources." Each of the three elements of that inquiry are focused on the finances of the *grant applicant*, not every single transit agency operating within the same region. Indeed, Section 5309(d)(1)(B) requires the *applicant* to "develop sufficient information to enable the Secretary to make findings of . . . local financial commitment," further emphasizing that the findings concern the *applicant's* finances. Congress has chosen to address questions about the fiscal needs of regional transportation systems through the metropolitan planning process described in Section 5303, rather than through Section 5309's criteria for evaluation of the local financial commitment of the individual project proponent. *See* PI Order at 4 ("I am not convinced at this stage of the litigation that plaintiffs' reading of § 5309(f)(1)(C) as applying to all local transportation systems (as opposed to those operated by the Grant applicant) is likely to prevail.").

For all these reasons, Plaintiffs have failed to state a claim under Section 5309 and their

claim should be dismissed.[9]

### III.    Plaintiffs Second Claim is Barred by the Doctrines of Claim and Issue Preclusion the Statute of Limitations, and/or Fails to State a Claim Because it Does Not Identify a Final Agency Action Reviewable Under the APA.

Plaintiffs' second claim alleges that FTA violated NEPA (as well as Section 4(f), ESA, and NHPA), by failing to prepare an SEIS based on the "new" information in Plaintiffs Submissions.  Compl. ¶¶ 92-99; *see* 23 C.F.R. § 771.130; *cf. Davis v. Latschar*, 202 F.3d 359, 369 (D.C. Cir. 2000) (requiring a supplemental impact statement only for "changes that cause effects which are significantly different from those already studied . . . .").  As further explained below, the Submissions contain information that is not "new," different from that already studied, or has no bearing on the potential environmental impacts of the Purple Line.[10]  Thus, Plaintiffs' SEIS claim fails because the claim is barred by the doctrines of claim and issue preclusion, the statute of limitations, and/or Plaintiffs fail to identify a final agency action taken by FTA.

### A.    Plaintiffs are Barred by the Doctrines of Claim and Issue Preclusion From Re-Litigating Arguments That Were Raised, or Could Have Been Raised, in *Purple Line I*.

Plaintiffs boldly state that their "complaint does not repeat or rely upon evidence supporting any of Plaintiffs' claims dismissed by this Court in the previous litigation between the parties.  The NEPA claims made herein arise from new information and changes in the project and its circumstances . . . ."  Compl. ¶ 44.  But a close read of the "new" material and

---

[9] Plaintiffs assert no other Section 5309 theories.  While the Complaint contains language that could be read as challenging FTA's determination that the project was justified under the criteria set forth in Section 5309(d)(2)(A)(iii), *see* Compl. ¶¶ 88, 90-91, Plaintiffs made clear in their preliminary injunction motion that "[t]he Complaint does *not* allege a violation of § 5309(d)(2)(A)(iii)."  ECF No. 18-1, at 3 n.3.

[10] *See, e.g.*, Ex. 15 (discussing the designation of the Hay's Spring amphipod as the "State Amphipod of DC").

circumstances that allegedly require an SEIS reveals that this Complaint is largely a repackaging of Plaintiffs' earlier claims attacking the FEIS and ROD.  Plaintiffs' claims are barred by the doctrines of claim and issue preclusion to the extent that they were raised and dismissed, or could have been raised, in the prior case.  *See I.A.M. Nat. Pension Fund, Ben. Plan A v. Indus. Gear Mfg. Co.*, 723 F.2d 944, 950 (D.C. Cir. 1983) ("The important policy of avoiding repetitious litigation involving the same causes of action or the same issues requires that courts not be penurious in giving full effect to *res judicata*." (citing *Texaco, Inc. v. Hickel*, 437 F.2d 636, 646 (D.C. Cir. 1970))); *see also Lewis v. Drug Enf't Admin.*, 777 F. Supp. 2d 151, 159 (D.D.C. 2011), aff'd, No. 11-5152, 2012 WL 1155698 (D.C. Cir. Mar. 8, 2012) (explaining that the affirmative defenses of *res judicata* and issue preclusion "may be raised by motion under Rule 12(b)(6) where they 'can either be established from the face of the complaint, matters fairly incorporated within it, and matters susceptible to judicial notice.'" (quoting *Felter v. Salazar*, 679 F.Supp.2d 1, 4 (D.D.C. 2010)); TRO Opp'n 10-14.

Under the doctrine of claim preclusion, "a subsequent lawsuit will be barred if there has been prior litigation (1) involving the same claims or cause of action, (2) between the same parties or their privies, and (3) there has been a final, valid judgment on the merits, (4) by a court of competent jurisdiction." *Smalls v. United States*, 471 F.3d 186, 192 (D.C. Cir. 2006).  The doctrine "precludes the parties or their privies from re-litigating issues that were or *could have been raised in*" the first action.  *Drake v. FAA*, 291 F.3d 59, 66 (D.C. Cir. 2002) (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980)).

The parties to *Purple Line I* are the same as the parties to the instant case, which resulted in a final judgment on the merits of Plaintiffs' claims by this Court.  Even though the final judgment in *Purple Line I*, ECF No. 142, is on appeal to the D.C. Circuit, the "pendency of [the]

appeal does not suspend the operation of a final judgment for purposes of collateral estoppel . . .

." *Nixon v. Richey*, 513 F.2d 430, 438 n.75 (D.C.Cir.1975).  The second, third, and fourth prongs

of this test are decidedly met.

As to the first prong, "[w]hether two cases implicate the same cause of action turns on

whether they share the same 'nucleus of facts.'" *Drake*, 291 F.3d at 66 (quoting *Page v. United

States*, 729 F.2d 818, 820 (D.C. Cir. 1984)).  Here, Plaintiffs concede that this case "grows out of

the same event or transaction," as *Purple Line I*.  Notice of Designation of Related Case 1, ECF

No. 3.  While Plaintiffs contend that the instant case arises from separate facts not previously

adjudicated by the Court, Compl. ¶ 1, in fact, Plaintiffs' claims largely arise from the same

purported defects in the Purple Line FEIS and ROD that they have continually challenged.

Simply because Plaintiffs revisited their own comments and "expert" declarations submitted in

the prior case and then re-submitted them this year does not mean that the information is "new."

It is not.  Plainly their Submissions are a thinly veiled attempt to relitigate the prior case and

further delay this important public infrastructure project.[11]  Plaintiffs' claims regarding ridership,

mitigation measures, amphipods, transportation technologies (and more) are plainly duplicative.

Even if the Court does not find that the above claims are precluded in their entirety by *res

judicata*, the Court should find that the three factors demonstrating issue preclusion are satisfied

here.  Issue preclusion bars successive litigation of an issue of fact or law where: (1) the same

issue now being raised was contested by the parties and submitted for judicial determination in

the prior case; (2) the issue was actually and necessarily determined by a court of competent

jurisdiction in the prior case; and (3) preclusion in the second case does not work a basic

---

[11] The allegations giving rise to Plaintiffs' SEIS claim that is barred by the doctrines of claim and issue preclusion and/or the statute of limitations are detailed further in the "List of Allegations Related to Claims Precluded and/or Barred By the Statute of Limitations," attached as Ex. 1.

unfairness to the party bound by the first determination.  *Martin v. Dep't of Justice,* 488 F. 3d

446, 454 (D.C. Cir. 2007); *see also I.A.M. Nat. Pension Fund, Ben. Plan A*, 723 F.2d at 947 n.3

("Where a subsequent action is brought on a different claim, the party is collaterally estopped

from relitigating issues actually litigated and determined in the prior action." (citing

RESTATEMENT (SECOND) OF JUDGMENTS § 27, cmt. b (AM. LAW INST. 1982))).  Indeed, Plaintiffs

present nearly identical arguments regarding ridership, *see, e.g.,* Ex. 27, Decl. of John

Bickerman, ¶ 9 (criticizing the ridership models and alleging "the ridership model and

conclusions were hidden from public view and scrutiny because the contractor used proprietary

software and neither the data nor the model were made publicly available . . . ."); *see also* Ex. 1,

and other topics as were presented in *Purple Line I.*

These issues were plainly before the Court in the prior case and cannot form the basis of

any claim here.  Affording Plaintiffs a second bite at the apple would undermine notions of

fairness that preclude parties from relitigating claims in successive suits.  *See Martin,* 488 F. 3d

at 454.

## B.    Plaintiffs' Claims Against the Record of Decision and Final Section 4(f) Determination are Barred By the Statute of Limitations.

Even if the Court finds that Plaintiffs' claims against the ROD are not precluded, they are

plainly barred by the 150-day statute of limitations.  23 U.S.C. § 139(*l*)(1) ("[A] claim arising

under Federal law seeking judicial review of a[n] . . . approval issued by [FTA] for a highway or

public transportation capital project shall be barred unless it is filed within 150 days after

publication of a notice in the Federal Register . . . ."); *see also Beverly Hills Unified Sch. Dist. v.*

*Fed. Transit Admin.*, No. CV 12-9861-GW(SSX), 2016 WL 4650428, at *108-15 (C.D. Cal. Feb.

1, 2016) (dismissing plaintiff's Clean Air Act claim as barred by the statute of limitations set

forth in 23 U.S.C. § 139(*l*)).  FTA published its announcement of the Purple Line approvals in

the Federal Register on March 31, 2014.  *See* Limitation on Claims Against a Proposed Public

Transportation Project, 79 Fed. Reg. 18,113-03 (Mar. 31, 2014).  Therefore, any claim seeking

judicial review of FTA's Section 4(f) *de minimis* impact determination; Section 106

Programmatic Agreement; or Record of Decision (ROD) must have been filed before August 28,

2014, more than three-years before the instant Complaint was filed.  *Id.*

These allegations amount to no more than an untimely critique of the NEPA analysis and

are barred by the statute of limitations.  *See* Ex. 1; 23 U.S.C. § 139(*l*).

### C.     The Agencies' Post-ROD Actions to Implement the Purple Line Project Do Not Constitute a Final Agency Action Reviewable Under The APA.

"[A]n agency is not required to make a new assessment under NEPA every time it takes a

step that implements a previously studied action, so long as the impacts of that step were

contemplated and analyzed by the earlier analysis."  *Mayo v. Reynolds*, No. 16-5282, 2017 WL

5146111, at *3 (D.C. Cir. Nov. 7, 2017) (citing *Wyoming v. U.S. Dep't of Agri*c., 661 F.3d 1209,

1257–58 (10th Cir. 2011)).  Plaintiffs' challenges to post-ROD implementation of the Project,

including its stormwater management, geotechnical borings, trail closure, and mitigation

measures, are unreviewable because "[t]he actions that an agency takes to implement a decision

are not, themselves, agency actions within the meaning of § 706(1) of the APA."  *Eason Land*

*Co. v. U.S. Dep't of the Interior*, No. 15-35641, 2017 WL 2889177, at *1 (9th Cir. July 7, 2017),

*petition for cert. docketed,* No. 17-533 (U.S. Oct. 10, 2017); *Vill. of Bald Head Island v. U.S.*

*Army Corps of Eng'rs*, 714 F.3d 186, 193-94 (4th Cir. 2013) (alleged failure of agency to

perform beach protection work described in earlier agency decision "was not a determination"

akin to an order, rule, license, or sanction, and was not the sort of "circumscribed [and] discrete"

action that could be compelled pursuant to Section 706(1)); *Wild Fish Conservancy v. Jewell*,

730 F.3d 791 (9th Cir. 2013) (similar holding).

Here, rather than presenting "new" information that has not been assessed, Plaintiffs' claims challenge the implementation of the Purple Line project based on previously raised concerns.[12]  But "[o]nce an agency has taken a 'hard look' at every significant aspect of the environmental impact of a proposed major federal action . . . it is not required to repeat its analysis simply because the agency makes subsequent discretionary choices in implementing the program."  *Mayo*, 2017 WL 5146111, at *7 (internal citations and quotation marks omitted). Because Plaintiffs have not identified a final agency action reviewable under the APA, the claims as to the adequacy of project implementation must be dismissed.  *See Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 188-89 (D.C. Cir. 2006) (noting that the failure to identify a "final agency action" can result in dismissal under Rule 12(b)(6)).

> ### D.    Plaintiffs Fail to State a Claim as to the Non-Federal Projects Including the Bethesda Metro Station South Entrance and Relocation of the Bethesda Community Hardware and Paint Building.

Plaintiffs do not articulate whether they believe the Bethesda Metro Station South Entrance ("South Entrance") and the Bethesda Community Hardware and Paint Building ("Wilson Store") projects are part of the Purple Line, or merely in close proximity—they simply state that they were unassessed and, therefore FTA must prepare an SEIS.  Compl. ¶¶ 71-72, 74-76; Ex. 1 at 9-11; Exs. 11-13 (discussing water appropriation permit for South Entrance); Ex. 1 at 11-12; Exs. 15-16 (discussing Wilson Store).

---

[12] *See, e.g.,* (1) Ex. 27, Decl. of John Bickerman, ¶ 5 (expressing concerns with implementation of geotechnical borings); (2) *Id.* ¶ 6 (questioning whether the agencies fulfilled their "promise[ ] to provide evacuation plans as part of their EIS."); (3) Compl. ¶ 73 (seeking current draft of Stormwater Management Report to assess compliance with the FEIS); (4) *id.* ¶ 78 (complaining about implementation of the mitigation commitment as to trail closure); *id.* ¶ 98 ("The planned extended closure of the [Trail] violates the mitigation commitments Defendants made in the ROD and therefore violated the regulations implementing NEPA . . . ."); Exs. 18-23 (questioning the implementation of tree clearing window for protection of forest interior dwelling species including the barred owl).

Should Plaintiffs acknowledge that these projects are not part of the Purple Line, but contend that the analysis of the indirect or cumulative effects of the South Entrance or the Wilson Store in the FEIS is lacking, Plaintiffs could have—but failed to—raise those arguments in *Purple Line I* and thus, they are precluded and barred by the statute of limitations. *See infra* Section III.B.

If instead, Plaintiffs assert that the South Entrance and Wilson Store projects are part of the Purple Line, but simply unassessed, they are wrong for another reason. Those projects are funded by Montgomery County and a private developer, respectively, *not* FTA. *See* Maryland Department of the Environment Bethesda Shaft Water Appropriations Permit, February 28, 2017 Meeting Minutes 1 (attached as Ex. 33) ("Bethesda Shaft is a *County funded effort* . . . There is no federal funding and is therefore not associated with the Record of Decision (ROD) for the [FEIS] for MTA's Purple Line Project." (emphasis added)); CARR Properties Notice of Construction (available at https://www.scribd.com/document/356003258/Construction-Notice-Historic-Bethesda-Hardware-Store) ("Currently located at 7250 Wisconsin Avenue, the Wilson Community Hardware Store will be relocated to its new location on Middleton Lane. This relocation is due to the redevelopment of the 7272 Wisconsin Avenue building site, where the Wilson Community Hardware Store currently sits.").[13]

Plaintiffs bear the burden of identifying the specific federal agency conduct and explaining how that conduct is "final agency action" within the meaning of 5 U.S.C. § 701. See

---

[13] Federal Defendants request the Court to take judicial notice of the facts stated in Ex. 33 and the CARR Properties Notice of Construction. *See* Fed. R. Evid. 201 (stating that the Court "must take judicial notice" upon request of a party of facts "that [are] not subject to reasonable dispute because" they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned"); *Abhe & Svoboda, Inc.*, 508 F.3d at 1059 (noting the Court is permitted to take judicial notice of facts in resolving a Rule 12(b)(6) motion).

*San Juan Audubon Soc'y v. Veneman*, 153 F. Supp. 2d 1, 5 (D.D.C. 2001); *cf. United States v. Nordic Vill. Inc.*, 503 U.S. 30, 34 (1992) (explaining that waivers of the government's sovereign immunity must be strictly construed).  Plaintiffs' claim that FTA must prepare an SEIS to evaluate those actions under NEPA, Section 4(f), or the NHPA fail because the projects do not utilize any federal funds.  *See Adler v. Lewis*, 675 F.2d 1085, 1091 (9th Cir. 1982) ("Section 4(f) is triggered only when the Secretary of Transportation is asked to approve a transportation program or project seeking to employ federal funds.").  FTA has taken no action with respect to the South Entrance or the Wilson Store and cannot exercise any authority or control over them.  *See Sierra Club v. U.S. Army Corps of Eng'rs*, 803 F.3d 31, 54 (D.C. Cir. 2015) (Brown, J. concurring) ("NEPA requires agency environmental review when the agency undertakes a major federal action defined as an action that significantly affects the human environment and is *subject to federal control and responsibility*." (citing 42 U.S.C. § 4332(2)(C); 40 C.F.R. § 1508.18; *Winnebago Tribe of Neb. v. Ray*, 621 F.2d 269, 273 (8th Cir.1980)) (emphasis added))).

Regardless of the tack Plaintiffs take, their claim that FTA must prepare an SEIS based on the South Entrance or Wilson Store projects should be dismissed.  The claim is precluded and barred by the statute of limitations, and Plaintiffs fail to state a claim because the APA's waiver of the United States' sovereign immunity extends only to federal final agency actions.  *See* 5 U.S.C. § 704; *Trudeau*, 456 F.3d at 188-89.

## CONCLUSION

For the foregoing reasons, Federal Defendants respectfully request the Court to dismiss Plaintiffs' Complaint in its entirety under Rule 12(b).

Respectfully submitted this 5th day of December, 2017.

JEFFREY H. WOOD
Acting Assistant Attorney General
United States Department of Justice
Environment & Natural Resources Division

 /s/  *Tyler L. Burgess*
TYLER L. BURGESS (DC 1025617)
Trial Attorney
Natural Resources Section
PO Box 7611
Washington, DC  20044-7611
(202) 616-4119
tyler.burgess@usdoj.gov

*Attorneys for Federal Defendants*

OF COUNSEL
NANCY-ELLEN ZUSMAN, Assistant Chief Counsel for Litigation and Regional Operations
Federal Transit Administration

CHARLES E. ENLOE, Trial Attorney
U.S. Department of Transportation
Office of General Counsel

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 5th day of December, 2017, I filed the foregoing

document electronically through the CM/ECF system, which caused all parties or counsel of

record to be served by electronic means, as more fully reflected on the Notice of Electronic

Filing.

/s/ *Tyler L. Burgess*
_____
TYLER L. BURGESS
U.S. Department of Justice
