## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

FRIENDS OF THE CAPITAL CRESCENT TRAIL:
  *et al.*

                        Plaintiffs,        :   Civil Case No. 17-cv-1811 RJL

     v.

FEDERAL TRANSIT ADMINISTRATION, *et al.* :

                      Defendants.

### PLAINTIFFS' MEMORANDUM OF LAW
### IN OPPOSITION TO DEFENDANTS'
### RULE 12(b)(6) MOTIONS TO DISMISS

Plaintiffs, Friends of the Capital Crescent Trail, John MacKnight Fitzgerald, Christine Real de Azua and Anna C. Haac, by and through undersigned counsel, submit this memorandum in opposition to the Rule 12(b)(6) motions to dismiss this action filed by the Federal Defendants and Maryland. The motions are without merit and should be denied. The motions are directed at the Counts Five and Six of the Amended Complaint filed on December 26, 2017. There is no dispute that these Counts are claims not previously made in the prior litigation between the parties, *i.e., Friends of Capital Crescent Trail, et al. v. FTA, et al.*, 255 F. Supp. 3d 60 (D.D.C.), *aff'd in part and rev'd in part*, 877 F.3d 1051 (D.C. Cir. 2017) ("*Purple Line I*").

Counts Five and Six are challenged on various grounds other than standing, assertedly resulting in a failure in both instances to state a claim upon which relief can be granted under Rule 12(b)(6). As will be detailed, under the Rule 12(b)(6) standard of review, factual matters alleged in the Amended Complaint are assumed to be true, and plaintiffs are to be afforded the benefit of all inferences that can be derived from the facts alleged. Hence, the appropriate starting point for evaluating the motions is review of the facts and inferences supporting Counts Five and Six.

**Count Five – 49 U.S.C. §303 and the NHPA**

In implementing or funding a transportation project, the Secretary is constrained by 49 U.S.C. § 303 if the project as proposed contemplates the use of publicly owned land of a public park, recreation area, or land of an historic site of national, State, or local significance. Subsection 303(c). The Secretary may approve a project only if there is no prudent and feasible alternative to using that land, and the program or project includes all possible planning to minimize harm to the protected area resulting from such use. *Id.* Subsection 303(d) excepts from this requirement only those actions that are temporary or *de minimus* as confirmed by a strict public interagency consultation process for making that determination. Complaint ¶37.

The National Historic Preservation Act ("NHPA"), 54 U.S.C. §§ 300101 et seq., and the regulations of the President's Advisory Council on Historic Preservation ("ACHP" or "Council") at 36 C.F.R. Part 800, restrict the actions of federal agencies, including the Federal Defendants, under certain circumstances when such actions will affect historic properties. As applicable to the FFGA at issue here, the NHPA requires that the Secretary,

> prior to the approval of the expenditure of any Federal funds on the undertaking or prior to the issuance of any license, shall take into account the effect of the undertaking on any historic property.

54 U.S.C. § 306208. Complaint ¶¶38-39. In addition, when federal funding, as here, will adversely affect an historic property, the funding should not issue without a careful determination that the adverse impact is justified. Specifically, 54 U.S.C. § 306113 requires as follows:

> Each Federal agency shall ensure that the agency will not grant a loan, loan guarantee, permit, license, or other assistance to an applicant that, with intent to avoid the requirements of section 306108 of this title, has intentionally significantly adversely affected a historic property to which the grant would relate, or having legal power to prevent it, has allowed the significant adverse effect to occur, unless the agency, after consultation with the Council, determines that circumstances justify granting the

2

assistance despite the adverse effect created or permitted by the applicant.

Furthermore, before any adverse effects to historic properties are to be permitted, the undertaking agency must first engage in the formal NHPA consultation process with the consulting parties and any interested members of the public – and also take efforts to avoid, minimize and mitigate any such adverse effects that were to be permitted. See 36 C.F.R. §800.4, *et seq.*

The NHPA implementing regulations (§800.16) clearly define the scope of the "undertaking" controlled by the Act as being comprehensive, so as to include elements not funded in whole or carried out directly by the agency:

> (y) Undertaking means a project, activity, or program funded in whole or in part under the direct or indirect jurisdiction of a Federal agency, including those carried out by or on behalf of a Federal agency; those carried out with Federal financial assistance; and those requiring a Federal permit, license or approval.

Plaintiffs have alleged three separate violations of these provisions. First, MTA's decision to seek, and the Federal Defendants' decision to grant, the FFGA for the Purple Line were made despite the need such grant occasioned to move the historic Bethesda Post Office out of its historic context. These actions and decisions were made without Defendants' having taken into account the effect of the grant of the FFGA on this historic property and without proper consultation with the President's Advisory Council on Historic Preservation on whether under the circumstances, awarding the FFGA was justified, notwithstanding the adverse effect on the historic context and integrity of the Post Office. Following execution of the FFGA in August 2017, the Old Post Office was cut in half and moved several blocks to facilitate the construction of the Purple Line Station in Bethesda. Such move was necessitated by the intended and actual routing of the Purple Line in Bethesda. The Defendants' acts and omissions are therefore in violation of 49 U.S.C. §303 and the NHPA, 54 U.S.C. §§ 306108, 306113. Complaint ¶¶91, 136.

Second, MTA's decision to seek, and the Federal Defendants' decision to grant, the FFGA for the Purple Line were made despite the need such grant occasioned to move or destroy the Talbot Avenue Bridge in Lyttonsville, eligible for inclusion on the National Register of Historic Places in the United States ("National Register" or "Register"), which is still in its original historic location.   These actions and decisions were made without taking into account the effect of the grant of the FFGA on this historic property and without proper consultation with the Council and interested members of the public on whether, under the circumstances, (a) awarding the FFGA was justified, notwithstanding the foreseeable adverse effect on the Bridge occasioned by the Project; and (b) efforts should be undertaken to avoid, minimize and mitigate any such adverse effects that were to be permitted.

Historically, the Bridge had been the only route from the isolated African-American community in Lyttonsville to greater Washington, D.C. The consultation undertaken by Defendants concerning the Bridge was inadequate under NHPA, because they failed to correctly evaluate the Bridge under the Register's criteria for evaluation and there was no good faith effort to engage with what NHPA refers to as "consulting parties" and "interested members of the public." *See* 36 C.F.R. §800.4 *et seq.*  The Defendant's acts and omissions are therefore in violation of 49 U.S.C. §303 and 54 U.S.C. §§306108, 306133. Complaint ¶¶92, 37.

Third, to facilitate the construction by Montgomery County of the elevators to the Bethesda Purple Line Station, plans were prepared to withdraw and discharge large volumes of underground water.  This plan was not assessed in the FEIS and only became apparent to the public in the release of a withdrawal permit application in January 2017.   The permit was granted by the State Department of the Environment on October 30, 2017, and the permit to discharge the withdrawn water is expected or has been granted.   Neither was evaluated in regard to the substantive

protection afforded parks, as required by 49 U.S.C. §303. Complaint ¶¶93, 138.

The permits allow the withdrawal and discharge of 50,000 – 100,000 gallons per day for four years or more, from a site 300 feet from Elm Street Park and near several known hazardous materials sites where volatile organic compounds and arsenic are present. There is no disclosed plan for treatment of the diverted water. Neither the diversion nor the permit for it were listed in the FEIS nor was the impact of such a major withdrawal and diversion assessed by Defendants in the NEPA process. Complaint ¶¶93-94.

The withdrawal is intended to lower the water table to what appears to be the depth of nearly two stories underground for elevator construction to serve what would be the deeply buried Bethesda Metro Station's South Entrance and Purple Line Station passageways. If successful, the permanently lowered water table would appear almost certain to starve Elm Street Park of the groundwater needed to keep many of its trees alive. Complaint ¶95.

The Defendants' acts and omissions are in violation of 49 U.S.C. §303 and are arbitrary and capricious, an abuse of discretion, and otherwise not in accordance with law, within the meaning of § 706(2) of the APA. Complaint ¶139.

## Count Six – 49 U.S.C. §303 and NEPA §101

As the Complaint details, the National Environmental Policy Act ("NEPA"), is the "basic national charter for protection of the environment." 40 C.F.R. §1500.1. NEPA section 101, 42 U.S.C. §4331, states that

> it is the continuing responsibility of the Federal Government to use all practicable means…to the end that the Nation may… (2) assure for all Americans safe, healthful, productive, and esthetically and culturally pleasing surroundings….

NEPA was enacted to

> help public officials make decisions that are based on understanding of environmental consequences, and to take actions that protect, restore, and enhance the environment," and to "insure that environmental information is available to public officials and citizens before decisions are made and before actions are taken.

40 C.F.R. §§1500.1(b) & (c). NEPA's implementing regulations define "environmental effects" to include the "ecological (such as the effects on natural resources and on the components, structures, and functioning of affected ecosystems), aesthetic, historic, cultural, economic, social, or health" aspects of a decision, "whether direct, indirect or cumulative." 40 C.F.R. §1508.8. Complaint ¶¶40-41.

At the time of its decision to take a proposed action, subject to NEPA, the agency must prepare a concise public Record of Decision ("ROD") that identifies all reasonable alternatives and states "whether all practicable means to avoid or minimize environmental harm from the alternative selected have been adopted, and if not, why they were not." *Id.* §1505.2.

Commitments by the agency or its partners made in the ROD to mitigate harms are binding. 40 C.F.R. §1505.2 provides that "A monitoring and enforcement program shall be adopted and summarized where applicable for any mitigation. Id., §1505.2(c). CEQ regulations also require that the lead agency shall include appropriate conditions in grants, condition funding of actions on mitigation and upon request make available to the public the results of relevant monitoring. 40 C.F.R. §1505.3. This regulation and the mitigation program it directs the agencies to carry out are enforceable by affected third parties such as Plaintiffs. Complaint ¶¶43-44.

Defendants, as they proceed with construction activities since the signing of the FFGA, have breached binding mitigation commitments contained in the ROD, including but not limited to having, as of November 29, 2017, three months after construction began, no Transportation and

Environmental Compliance Mitigation Plans for the Project, despite CEQ requirements and Commitments in the ROD. Thus, Defendants have violated NEPA and the FTA, which predicates and conditions an FFGA and ongoing disbursements thereunder upon ongoing compliance with NEPA and commitments made in the FTA/NEPA-based ROD. Complaint ¶141.

Defendant Maryland has failed to comply with the Mitigation Commitments of the ROD (Attachment A) and the Federal Defendants have failed to have copies of, let alone enforce, the Transportation and Environmental Compliance Plans and essential elements that should be included in them, including the Stormwater Management and evacuation plans and routes for use in case of hazardous materials releases, which Plans are required prior to construction according to the ROD's Table of Commitments. That Table explains that the commitments are binding and may not be altered without written permission from the Federal Defendants. The ROD's Attachment A states as its very first commitment for the Project that prior to construction the MTA will coordinate with the Counties and State Highway Administration and develop a Transportation Management Plan to minimize adverse impacts to traffic, transit and pedestrians and cyclists. It lists the Counties as Responsible Parties. Complaint ¶¶142, 144.

The FFGA in Section 16 refers to its Attachment 7 on environmental mitigation and also to Section 25 of the Master Agreement entitled "Environmental Protections." In the FFGA's Section 16 these are described as adding to but not overriding the ROD Mitigation Commitments which the FTA says are binding and, as provided in Section 19 "Remedies" can result in suspension of payments for a breach and ultimately the revocation of the agreement and all funding if they are not obeyed. MTA's contractor is acting in violation of some of these commitments already, including proceeding with no Transportation or Environmental Compliance Plan in place and

having followed no process to Minimize Closures of the Trail when it abruptly closed the Trail in its entirety for four to five years. Complaint ¶146.

Stormwater and Hazardous Materials Plans are subparts of the Environmental Compliance Plan due prior to construction. That Plan is intended "to protect workers general public " yet FOIA and PIA and other requests filed by or on behalf of the Plaintiffs and the Town of Chevy Chase for the Stormwater Management Plans have been repeatedly denied, including as recently as October 2017. Given the unveiling only in the fall of 2017 of a more up to date Stormwater Plan, and with no full Environmental or Transportation Plans publicly available as of November 2017, affected jurisdictions and citizens could not exercise their intended and legally required functions of acting to protect themselves and the resources for which they are legally recognized stewards. Complaint ¶147.

The June 7, 2016, letter from MTA submitting the FFGA to FTA "to finalize and execute the FFGA with MTA" states that "[t]he mitigation measures and other Project features that reduce adverse impacts, to which FTA and MTA, in conjunction with the MDOT committed in the environmental record, may not be eliminated from the Project, except by FTA's written consent in accordance with applicable laws and regulations. These mitigation measures include, but are not limited to, commitments to perform further consultation with any agency on environmental and related matters.   But in response to a November 6, 2017 FOIA request for copies of the Transportation and Environmental Compliance Plans and the storm water management report that should be part of the latter, the Federal Defendants replied that they did not have them and that requesters should ask the MTA.  Furthermore, on September 7th the FTA admitted in response to a FOIA request that it had no copies of any applications for permits, permits received, or pending nor any correspondence concerning any of the (18) listed permits required for the Purple Line in

Table 4- 54 of the FEIS. Given that it is the duty of the FTA under NEPA and the CEQ regulations and its ROD to ensure that its grantees comply with the Mitigation Commitments of the ROD, that FOIA response is tantamount to an admission that enforcement of those requirements is being ignored by the Federal Defendants. Complaint ¶¶149, 150.

The abrupt, full closure of the Trail for four to five years, including all paths across used by daycare children and teachers and by school children of all ages, harms all of the Plaintiffs, and violates the mitigation commitment Defendants made in the ROD to minimize closures of the Trail and therefore violates NEPA and its implementing regulations. These regulations provide that "[m]itigation . . . and other conditions established in the environmental impact statement or during its review and committed to as part of the decision shall be implemented by the lead agency or other appropriate agencies." 40 C.F.R. § 1505.3. Defendants have failed to abide by their duty under the regulations to "[i]nclude appropriate conditions in grants, permits or other approvals," and to "[c]ondition funding on mitigation" required by the ROD, *id.*, and have therefore acted in a manner that is arbitrary, capricious, and not in accordance with law in violation of APA § 706(2), and have unlawfully withheld agency action in violation of APA § 706(1).  Complaint ¶151.


### ARGUMENT

### I.      THE MOTIONS SHOULD BE DENIED AS TO COUNT FIVE

#### A. <u>Defendants Have Not Shown That Count Five Is Untimely</u>

Defendants' principal ground for dismissal of Count Five is that it is untimely filed under 23 U.S.C. §139(l), in light of the March 31, 2014 Federal Register Notice, 79 Fed. Reg. 18113-14. A copy of the Notice is attached as Exhibit 1.  Based on the Notice and its publication date, Defendants argue that Count Five became untimely under the 150-day limitations period in §139(l)

as of August 28, 2014, more than three years before this action was filed. Fed. Mem. 18-19; Md. Mem. 22-23. This argument does not withstand scrutiny.

As the Court is aware, prior litigation between three of the Plaintiffs and Defendants over Purple Line NEPA compliance was in fact filed in this Court before August 28, 2014. This was in keeping with the Notice, whose supporting documentation was described as the "Final Environmental Impact Statement, dated August 2013," and which listed as "final agency action" the Record of Decision dated March 19, 2014. In that lawsuit, along with their NEPA claims, Plaintiffs raised claims that Defendants had violated 49 U.S.C. § 5309 by not making the findings required for an FFGA as part of the March 2014 ROD. Defendants asserted that such claims were not yet ripe, as no FFGA had been executed. This Court granted summary judgment to Defendants on Plaintiffs' FFGA-based claims. Case 1:14-cv-01471-RJL, ECF No. 142. In a subsequent Memorandum Opinion, filed June 9, 2017, the Court explained as follows:

> In sum, plaintiffs allege that the defendants have not made the necessary § 5309 findings, but defendants have not yet executed the FFGA that obligates them to make those findings. Therefore, plaintiffs' claim "rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all," and is therefore not ripe for judicial decision. *In re Aiken Cty.*, 645 F.3d 428, 435 (D. C. Cir. 2011).

Id., ECF No. 149 at 13.

This sequence of events makes clear that the Notice of March 2014 was not an all-encompassing start of the limitations period for any and all claims bearing some relationship to the Project. The Notice itself states generally that it applies "to all FTA decisions on the listed project **as of the issuance date of this notice** and all laws under which such actions were taken." Notice at 18114 (emphasis added). The Notice does not specify what those "FTA decisions" were, except that it specifically mentions the ROD and the FEIS. That left no doubt that the limitations

clock had begun running for NEPA-based challenges to the ROD and the FEIS, and Plaintiffs acted accordingly, filing *Purple Line I* on August 26, 2014. The same cannot be said for the actions being challenged in Count Five. While the Notice does mention the "Section 4(f) *de minimus* impact determination" and "a Section 106 Programmatic Agreement," Defendants point to nothing in the Complaint admitting that the events complained of in Count Five were matters addressed in those agency actions or had in fact even occurred "as of the issuance date of this notice," *i.e.,* as of March 31, 2014.[1] Indeed, a fair reading of the Complaint suggests that in all three instances mentioned in Count Five, the events complained of post-date, to a substantial extent, not only that date but also the limitations deadline of August 28, 2014. Had Defendants attempted to introduce evidence that the allegations in Count Five were ripe for adjudication as of that time, the Court would be obliged to either deny the motion or treat it as one for summary judgment, and provide all parties "a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12 (d).[2] Finally, the Federal Defendants, but not Maryland, argue that untimely claims under 23 U.S.C. § 139(l) cannot be "reinstated" via "execution of the FFGA." Fed. Mem. 17. This argument is not pertinent to the statute of limitations defense, in that Defendants have failed to demonstrate that Count Five is untimely absent the assistance of such a "reinstatement."

---

[1] Plaintiffs were not obliged to plead facts to show that Count Five has no limitations defect; statute of limitations is an affirmative defense, Fed. R. Civ. P. 8 (c)(1), and as such Defendants have the burden of proof.

[2] E.g., Maryland claims that "there is no dispute that Defendants fully considered the 'Talbot Avenue Bridge' which is located in 'Lyttonsville' Maryland, as part of the NHPA and Section 4(f) process before approving the Project." Md. Mem. 23 n.9. While Plaintiffs appreciate the correction of their Complaint's typographical error in referring to "Laytonsville," Plaintiffs do not acquiesce in this attempt to insert extra-record evidence into a Rule 12(b)(6) motion, and in fact disagree with Maryland's assertion that there is no dispute that Defendants fully considered the Bridge in accordance with their duties under the applicable law.

Maryland identifies what it claims are three instances of statute of limitations dismissals under 23 U.S.C. 139 (l)(1). Md. Mem. 22-23. None of them have any similarity that would make them helpful here. The first of them (*Monumental*) was a ruling on a preliminary injunction application, not a limitations defense; the second (*Thompson*) was simply the rejection of a late-filed NEPA claim by an intervenor under circumstances where the plaintiff had made a timely NEPA challenge; and the third (*Highland*) was a case where the court rejected a claim that a re-evaluation leading to a second denial of a request for a more comprehensive environmental review did not extend the timeline for an untimely challenging the original Finding Of No Significant Impact ("FONSI"). Similarly, Federal Defendants cite an unpublished 2016 case from the Central District of California (*Beverly Hills Unified Sch. Dist. v. FTA*). Fed. Mem. 18-19. In that case, Beverly Hills claimed the FTA violated the Clean Air Act conformity requirements in examining whether Project construction would cause violations of applicable air quality standards. But the ROD, unlike here, specifically referenced the conformity requirements and the Federal Register notice listed air quality conformity among the final agency actions for which the limitations period was to run. 2016 WL 4650428 at *102, 108.

## B.   The Federal Defendants' Have Not Shown Claim Preclusion

The Federal Defendants, but not Maryland, argue that Count Five is barred by the doctrine of claim preclusion, in that Count Five could have been raised in *Purple Line I.* Fed. Mem. 19-20. More specifically, they argue there is "no compelling reason as to why their Section 4(f) claim here could not have been presented alongside their Section 4(f) arguments in *Purple Line I.* Fed. Mem. 19-20. But as detailed above, there is such a "compelling reason." Defendants were successful in persuading this Court in that case that Plaintiffs' claims tethered to FFGA execution were not ripe for adjudication. Federal Defendants, in effect, now argue that Plaintiffs lost their

ability to pursue Count Five because they failed to include Count Five among the other claims made in *Purple Line I* deemed premature by this Court. That makes no sense and the argument is further undermined by the fact that Count Five is grounded in factual allegations that long post-date the limitations deadline of August 28 , 2014—including bisecting and moving the Old Post Office in August 2017 and implementation of plans for a major reduction in the water table at the Bethesda Purple Line Station, beginning in January 2017.

Plaintiffs also assert that the harm associated with these plans, all of which post-date execution of the FFGA, is plainly linked to execution of the FFGA, in that the actual events on the ground, just like the start of Project construction in September 2017, were inextricably tied to approval of federal funding for the Project. Federal Defendants have failed to demonstrate that Plaintiffs would have been any more successful in avoiding an unadjudicated dismissal of Count Five in *Purple Line I* than they were with the FFGA-grounded claims they did make in that case. Simply put, Plaintiffs cannot be barred by claim preclusion for failure to bring premature claims in prior litigation.

### C.   Count Five Is Independent of Harm Attributable To Other Parties and Defendants are Required to Control Their Partners in the Project

Defendants also challenge Count Five as to the Old Post Office and the water drawdown at the Bethesda Purple Line Station location on the grounds that they are not part of the Project and are in fact funded by others. Fed. Mem. 20-21; Md. Mem. 23. This argument misconstrues the Project and the Defendants' duties arising under 49 U.S.C. §303. Under that provision, the project sponsor must reveal uses of parks and historic sites to the federal funding entity in order to ensure that no such sites are used directly or constructively by a project the agency is funding, unless there is no feasible alternative. As set forth on a Department of Transportation website:

> Regardless of whether the Section 4(f) evaluation is processed independently or as a subsection of a NEPA document, the project sponsor must submit a draft that (1) identifies and evaluates avoidance alternatives and (2) identifies and evaluates measures to minimize harm to the Section 4(f) property.

> If the Section 4(f) evaluation concludes that there is no avoidance alternative that is feasible and prudent, and more than one reasonable alternative uses Section 4(f) property, then the project sponsor must also evaluate which alternative that uses Section 4(f) property would cause the least overall harm.

> https://www.environment.fhwa.dot.gov/env_topics/4f_tutorial/eval uations_individ.aspx

Plaintiffs are also challenging Defendants' failure to undertake proper consultation with the Council (as to two of the matters in Count Five) or with consulting parties (including interested members of the public) as required under the NHPA as to the third matter.  These failures, **by Defendants**, were complete and actionable before Defendants' non-party partners' harmful actions, facilitated by Defendants' abdication of statutory responsibility, began to take place last fall.

Defendant Federal Transit Administration has a federal duty to monitor the Project with regard to all of these obligations and the Maryland Transportation Administration has parallel duties with respect to all of their agents and partners, including Montgomery County. The County conveyed the Trail for the Project, and but for the building of the Purple Line elevators and South Bethesda Station entrance, the Project could not be completed as planned. This monitoring duty has for several years been applied in part through the Monitor and Mitigation Program discussed below in Count Six. Defendants' arguments erroneously imply that there are no such duties.

## II.    THE MOTIONS SHOULD BE DENIED AS TO COUNT SIX

The Federal Defendants seek to dismiss Count Six on the grounds Plaintiffs are challenging agency action that is non-reviewable under the APA. Fed. Mem. 21-23.  Maryland similarly seeks

dismissal on the grounds that Plaintiffs have no right to seek judicial enforcement of a mitigation plan put forth in the ROD.  Md. Mem. 24-25.  These parallel arguments do not justify dismissal of Count Six.  Federal regulations require the Federal Defendants to ensure that mitigation and other conditions established in environmental documentation and committed to as part of the decisionmaking process are implemented.  See 40 C.F.R. §1505.3 ("Mitigation and other conditions established in [a NEPA document] and committed as part of the decision **shall** be implemented by the lead agency.")(emphasis added).   In addition, 40 C.F.R. §1505.2(c) provides that "A monitoring and enforcement program shall be adopted and summarized where applicable for any mitigation."  Both of these CEQ regulations are referenced in the Complaint ¶¶43-44.

As a result of these formal commitments in the NEPA process, the Federal Defendants and state sponsors of federally funded projects are legally obligated to carry out the mitigation measures to which they agreed in order for the Project to pass muster under NEPA.  *See, e.g., Tyler v. Cisneros*, 136 F.3d 603, 609-09 (9th Cir. 1998)(holding that "if an agency does decide [in a NEPA document] to enter into a mitigation measure, that measure 'shall be implemented,'" and rejecting the agency's argument that "HUD had no continuing authority over the project and could not demand the changes necessary to redress plaintiffs' grievances" on the basis that "HUD had continuing authority over the project" as a result of its commitment to undertake specific measures)(*quoting* 40 C.F.R. § 1505.3); *Forest Serv. Employees for Environmental Responsibility v. U.S. Forest Serv.*, No. 04-3061, 2005 WL 2620528, *3 (D. Or. Oct. 14, 2005)("If an agency decides to enter into mitigation measures, [CEQ] regulations require that the measure be implemented."), *vacated as moot*, 277 Fed. Appx. 681(9th Cir. 2008).  Plaintiffs have alleged in specific detail that Defendants have not followed through on their mitigation commitments.

Accordingly, the Court cannot sustain what amounts to a bait-and-switch tactic, securing NEPA compliance with commitments they then categorically deny affected persons have any right to enforce. Rather, as noted above, NEPA regulations require Defendants to "implement" the measures to which they committed and the Court must compel them to abide by that obligation. *See* 5 U.S.C. § 706(1) ("The reviewing court shall . . .compel agency action unlawfully withheld or unreasonably delayed."). *See United States v. Nixon,* 418 U.S. 683, 695-96 (1973) ("So long as this regulation remains in force the Executive Branch is **bound by it**")(emphasis added); *Memorial, Inc. v. Harris,* 655 F.2d 905, 910-11n.14 (9th Cir. 1980)(It is axiomatic that agencies must comply with their own regulations while they remain in effect.").

The Federal Defendants appear to claim that the federal agency conduct being complained about has not been specifically identified. Fed. Mem. 20. But they make no effort to explain what is ambiguous or vague about the specificity set forth in the Complaint at ¶¶ 141, 143-44 about the mitigation commitments that have been honored in the breach. And the case cited by the Federal Defendants dealing with this issue, *San Juan Audubon Soc'y v. Veneman,* 153 F. Supp. 2d 1 (D.D.C. 2001) is actually one where Judge Urbina held that the plaintiff indeed had sufficiently particularized the agency action at issue. *Id.* at 5-6.

Federal Defendants also assert that the ROD's Mitigation and Monitoring Commitments and Program are not final actions that can be judicially reviewed, Fed. Mem. 23, yet at the same time assert that the required Plans are in place and are being used day-to-day. *Id.* The latter disproves the former as to the several commitments that require specific plans to be in place "prior to construction." See Fed. Mem. Ex. 1 (ROD Commitments and Mitigation Measures). This Exhibit is confirmation of the Federal Defendants' overall duty to ensure compliance with the commitments. As noted in the Complaint, the FTA admitted that months after the closure of the

16

Trail and commencement of tree clearing and construction, the FTA did not possess copies of the several plans required to be in place prior to construction. This confirms that they could not fulfill the duty to protect directly affected persons such as Plaintiffs from violations, as they were unaware of the Commitments. Complaint ¶150.

Defendants assert that Plaintiffs are asking the Court to create enforcement remedies that do not exist. Fed. Mem. 23; Md. Mem. 25. The Commitments, however, arise out of both NEPA and 49 U.S.C. §303, whereby injured parties have the right to seek judicial review and remedies. *Tyler v. Cisneros*, 136 F.3d 603 (9th Cir. 1998). See CEQ Formal Guidance on Appropriate Use of Mitigation and Monitoring (2011) (confirming that the Mitigation regulations are just as binding as any others and listing ways in which the agencies should remedy failures to comply).

Indeed, the leading case on judicial remedies for NEPA violations ruled that "the remedy should be shaped so as to fulfill the objectives of the statute as closely as possible, consistent with the broader public interest." *Environmental Defense Fund v. Marsh,* 651 F.2d 983, 1005 (5th Cir. 1981). NEPA objectives, including preventing eliminating damage to the environment and ensuring environmentally responsible decisionmaking by agencies. 40 C.F.R. §§1500.1(b) and (c).

## CONCLUSION

For the foregoing reasons, the motions of the Federal Defendants and Maryland to dismiss Counts Five and Six pursuant to Rule 12(b)(6) should be denied.

Respectfully submitted,

**KNOPF & BROWN**

March 29, 2018

David W. Brown, D.C. Bar No. 415429
401 E. Jefferson Street, Ste. 206
Rockville, MD 20850
brown@knopf-brown.com
(301) 545-6100

John M. Fitzgerald, D.C. Bar No. 32209
Attorney and Advocate
4502 Elm Street
Chevy Chase, MD 20815
greenknights.law@gmail.com
(301) 913-5409

**Attorneys for Plaintiffs**

Issued in Kansas City, MO, on March 21, 2014.

**Edward A. Hyatt,**

*Acting Manager Airports Division.*

[FR Doc. 2014–07113 Filed 3–28–14; 8:45 am]

BILLING CODE 4910-13-P

## DEPARTMENT OF TRANSPORTATION

### Federal Highway Administration

### Federal Transit Administration

[FHWA ZRIN–2125–ZA04; FTA ZRIN–2132–ZA01]

### MAP–21 Section 1306 Financial Penalties Guidance

**AGENCY:** Federal Highway Administration (FHWA), Federal Transit Administration (FTA), Department of Transportation (DOT).

**ACTION:** Notice of availability.

**SUMMARY:** The Federal Highway Administration (FHWA) and the Federal Transit Administration (FTA) are issuing joint guidance on the implementation of the financial penalty provisions contained in Section 1306 of the Moving Ahead for Progress in the 21st Century Act (MAP–21). The financial penalty provisions require Federal agencies of jurisdiction (Reviewing Agency) to render a decision on a permit, license, or other approval related to a transportation project within 180 days from the later of the date FHWA or FTA issue a Record of Decision or Finding of No Significant Impacts for a project, or the date on which an application for a permit, license, or approval for the project is complete. If the Reviewing Agency does not render a decision by the 180-day deadline, it is subject to a rescission of funds of $10,000 or $20,000 per week until the Reviewing Agency renders a decision. The FHWA and FTA have the authority to grant "no-fault" certifications if the Reviewing Agency's failure to decide was due to circumstances beyond its control. You may review the guidance by visiting FHWA's Web site at *http://www.fhwa.dot.gov/map21*, or FTA's Web site at *http://www.fta.dot.gov/map21*.

**DATES:** This Guidance is effective on March 31, 2014.

**FOR FURTHER INFORMATION CONTACT:** For FHWA: Bruce Bender, Office of Project Delivery and Environmental Review, (202) 366–2851, or Jomar Maldonado, Office of the Chief Counsel, (202) 366–1373, Federal Highway Administration, 1200 New Jersey Ave. SE., Washington,

DC 20590–0001. For FTA: Elizabeth Patel, Office of Planning and Environment, (202) 366–0244, or Dana Nifosi, Office of Chief Counsel, (202) 366–4011, Federal Transit Administration, 1200 New Jersey Ave. SE., Washington, DC 20590–0001. Office hours are from 8:00 a.m. to 4:30 p.m. e.t., Monday through Friday, except Federal holidays.

**SUPPLEMENTARY INFORMATION:** Section 1306 of MAP–21 (Pub. L. 112–141, 126 Stat. 535) codified in 23 U.S.C. 139 that "[a] Federal agency of jurisdiction over an approval required for a project under applicable laws shall complete any required approval on an expeditious basis using the shortest existing applicable process." 23 U.S.C. 139(h)(6)(A). If a Reviewing Agency fails to decide within a specific timeframe, an amount shall be rescinded from the applicable office of the head of the agency not later than 1 day after the applicable date and once each week thereafter until a final decision is rendered. The rescission amount is equal to $20,000 per week if the project will be funded under Title 23, U.S. Code, and is estimated to cost more than $100 million, or $10,000 per week for any other projects requiring an environmental assessment or environmental impact statement under FHWA's or FTA's procedures implementing the National Environmental Policy Act of 1969 (NEPA). The applicable date is described as the later of (I) the date that is 180 days after the date on which an application for the permit, license, or approval is complete; and (II) the date that is 180 days after the date on which the Federal lead agency issues a decision on the project under NEPA. 23 U.S.C. 139(h)(6)(B)(ii).

The FHWA and FTA developed this guidance in coordination with the Reviewing Agencies that are most likely to be affected by this provision; however, it is not intended to guide their implementation specifically. The guidance provides a framework for FHWA and FTA personnel to make "no-fault" certifications and serves as a consensus document to help inform agency-specific implementation by the Reviewing Agencies. The guidance is available online at *www.fhwa.dot.gov/map21*, and *www.fta.dot.gov/map21*.

Authority: Sec. 1306, Pub. L. 112–141, 126 Stat. 535 (2012).

Issued on: March 25, 2014.

**Gregory G. Nadeau,**

*Deputy Administrator, Federal Highway Administration.*

**Therese McMillan,**

*Deputy Administrator, Federal Transit Administration.*

[FR Doc. 2014–07052 Filed 3–28–14; 8:45 am]

BILLING CODE 4910-22-P

## DEPARTMENT OF TRANSPORTATION

### Federal Motor Carrier Safety Administration

### Sunshine Act Meetings

**AGENCY:** Federal Motor Carrier Safety Administration (FMCSA), DOT.

**ACTION:** Notice of Unified Carrier Registration Plan Board of Directors meeting.

**TIME AND DATE:** The meeting will be held on April 10, 2014, from 12:00 Noon to 3:00 p.m., Eastern Daylight Time.

**PLACE:** This meeting will be open to the public via conference call. Any interested person may call 1–877–422–1931, passcode 2855443940, to listen and participate in this meeting.

**STATUS:** Open to the public.

**MATTERS TO BE CONSIDERED:** The Unified Carrier Registration Plan Board of Directors (the Board) will continue its work in developing and implementing the Unified Carrier Registration Plan and Agreement and to that end, may consider matters properly before the Board.

**FOR FURTHER INFORMATION CONTACT:** Mr. Avelino Gutierrez, Chair, Unified Carrier Registration Board of Directors at (505) 827–4565.

Issued on: March 18, 2014.

**Larry W. Minor,**

*Associate Administrator, Office of Policy, Federal Motor Carrier Safety Administration.*

[FR Doc. 2014–07218 Filed 3–27–14; 4:15 pm]

BILLING CODE 4910-EX-P

## DEPARTMENT OF TRANSPORTATION

### Federal Transit Administration

### Limitation on Claims Against a Proposed Public Transportation Project

**AGENCY:** Federal Transit Administration (FTA), DOT.

**ACTION:** Notice.

**SUMMARY:** This notice announces final environmental actions taken by the Federal Transit Administration (FTA) for a project in Montgomery County and

*Exhibit 1*

Prince George's County, MD. The purpose of this notice is to announce publicly the environmental decisions by FTA on the subject project and to activate the limitation on any claims that may challenge these final environmental actions.

**DATES:** By this notice, FTA is advising the public of final agency actions subject to Section 139(l) of Title 23, United States Code (U.S.C.). A claim seeking judicial review of FTA actions announced herein for the listed public transportation project will be barred unless the claim is filed on or before August 28, 2014.

**FOR FURTHER INFORMATION CONTACT:** Nancy-Ellen Zusman, Assistant Chief Counsel, Office of Chief Counsel, (312) 353–2577 or Terence Plaskon, Environmental Protection Specialist, Office of Human and Natural Environment, (202) 366–0442. FTA is located at 1200 New Jersey Avenue SE., Washington, DC 20590. Office hours are from 9:00 a.m. to 5:30 p.m., Monday through Friday, except Federal holidays.

**SUPPLEMENTARY INFORMATION:** Notice is hereby given that FTA has taken final agency actions by issuing certain approvals for the public transportation project listed below. The actions on the project, as well as the laws under which such actions were taken, are described in the documentation issued in connection with the project to comply with the National Environmental Policy Act (NEPA) and in other documents in the FTA administrative record for the project. Interested parties may contact either the project sponsor or the relevant FTA Regional Office for more information on the project. Contact information for FTA's Regional Offices may be found at *http://www.fta.dot.gov.*

This notice applies to all FTA decisions on the listed project as of the issuance date of this notice and all laws under which such actions were taken, including, but not limited to, NEPA [42 U.S.C. 4321–4375], Section 4(f) of the Department of Transportation Act of 1966 [49 U.S.C. 303], Section 106 of the National Historic Preservation Act [16 U.S.C. 470f], and the Clean Air Act [42 U.S.C. 7401–7671q]. This notice does not, however, alter or extend the limitation period for challenges of project decisions subject to previous notices published in the **Federal Register.** The project and actions that are the subject of this notice are:

*Project name and location:* Purple Line Project, Montgomery County and Prince George's County, MD. *Project sponsor:* Maryland Transit Administration (MTA). *Project description:* The proposed project is a

16.2-mile east-west light rail transit (LRT) line between the Bethesda Washington Metropolitan Area Transit Authority (WMATA) Metro Station in Montgomery County and the New Carrollton WMATA Metro Station in Prince George's County, Maryland. The LRT line will be at-grade except for one short tunnel section and three sections elevated on structures. It will operate mainly in dedicated or exclusive lanes. System elements also include 21 stations, two storage and maintenance facilities, 20 traction power substations, 14 signal bungalows, and other ancillary facilities. *Final agency actions:* Section 4(f) *de minimis* impact determination; a Section 106 Programmatic Agreement, dated March 14, 2014; project-level air quality conformity; and Record of Decision (ROD), dated March 19, 2014. *Supporting documentation:* Final Environmental Impact Statement, dated August 2013.

Issued on: March 25, 2014.

**Lucy Garliauskas,**
*Associate Administrator Planning and Environment.*

[FR Doc. 2014–07079 Filed 3–28–14; 8:45 am]

**BILLING CODE 4910–57–P**

---

# DEPARTMENT OF TRANSPORTATION

## National Highway Traffic Safety Administration

### Reports, Forms and Record Keeping Requirements; Agency Information Collection Activity Under OMB Review

**AGENCY:** National Highway Traffic Safety Administration, DOT.

**ACTION:** Notice.

**SUMMARY:** In compliance with the Paperwork Reduction Act of 1995 (44 U.S.C. 3501 *et seq.*), this notice announces that the Information Collection Request (ICR) abstracted below has been forwarded to the Office of Management and Budget (OMB) for review and comment. The ICR describes the nature of the information collections and their expected burden. The **Federal Register** Notice with a 60-day comment period was published on December 3, 2013 (78 FR 72750).

**DATES:** Comments must be submitted on or before April 30, 2014.

**FOR FURTHER INFORMATION CONTACT:** Coleman Sachs, Office of Vehicle Safety Compliance (NVS–223), National Highway Traffic Safety Administration, West Building, 4th Floor, Room W43–481, 1200 New Jersey Avenue SE., Washington, DC 20590.

**SUPPLEMENTARY INFORMATION:**

## National Highway Traffic Safety Administration.

*Title:* 49 CFR part 566 *Manufacturer Identification.*

*OMB Number:* 2127–0043.

*Type of Request:* Extension of a Currently Approved Collection.

*Abstract:* The National Highway Traffic Safety Administration (NHTSA) has requested OMB to extend the information collection that is incident to NHTSA's administration of the regulations at 49 CFR part 566 *Manufacturer identification.* Those regulations require manufacturers of motor vehicle or motor vehicle equipment, other than tires, to which a Federal motor vehicle safety standard (FMVSS) applies, to submit to NHTSA, on a one-time basis, identifying information on themselves and a description of the products that they manufacture to those standards. The information that must be submitted includes: (a) The full individual, partnership, or corporate name of the manufacturer; (b) the residence address of the manufacturer and State of incorporation, if applicable; and (c) a description of each type of motor vehicle or of covered equipment manufactured by the manufacturer, including, for motor vehicles, the approximate ranges of gross vehicle weight ratings (GVWR) for each type. The information must be submitted no later than 30 days after the manufacturer begins to manufacture motor vehicles or motor vehicle equipment subject to the FMVSS. No specific form need be used for the submission of this information. A suggested form that can be used to submit the required information is included on pages 35 and 36 of a handbook entitled *Requirements for Manufacturers of Motor Vehicles and Motor Vehicle Equipment* that can be accessed on the agency's Web site at *www.nhtsa.gov/cars/rules/maninfo.* Manufacturers who have previously submitted identifying information must ensure that the information on file is accurate and complete by submitting revised information no later than 30 days after a change in the business that affects the validity of that information has occurred.

This information collection is necessary to ensure that manufacturers of motor vehicles and motor vehicle equipment subject to the Federal motor vehicle safety standards identify themselves and their products to NHTSA so that NHTSA may contact them in the event that one of their products is suspected or found to contain a defect related to motor vehicle safety or fails to comply with an

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that this 29th day of March 2018, a true and correct copy of the foregoing Plaintiffs' Memorandum 0f Law In Opposition To Defendants' Rule 12(B)(6) Motions To Dismiss a was served on the defendants by electronically sending a copy to their attorney of record through the CM/ECF filing system in the Court:

Counsel for Department of Justice ("DOJ") and Federal Transit Authority ("FTA"):

Tyler Burgess, Esq.
U.S. Department of Justice
Tyler.burgess@usdoj.gov

Counsel for Maryland Transit Administration (MTA):

Julie Sweeney, Esq.
Assistant Attorney General
jsweeney@sha.state.md.us

Albert M. Ferlo, Esq.
Perkins Coie LLP
aferlo@perkinscoie.com

David W, Brown