**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| FRIENDS OF THE CAPITAL CRESCENT TRAIL, *et al.*, | ) No. 1:17-cv-01811-RJL ) ) |
| Plaintiffs, | ) Hon. Richard J. Leon ) ) |
| v. | ) **FEDERAL DEFENDANTS' REPLY** ) **MEMORANDUM IN SUPPORT OF** |
| FEDERAL TRANSIT ADMINISTRATION, *et al.*, | ) **MOTION TO DISMISS** ) **PLAINTIFFS' AMENDED** ) **COMPLAINT UNDER RULE 12(b)** |
| Defendants. | ) ) |

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

ARGUMENT .................................................................................................................. 2

I.     Plaintiffs Lack Article III Standing to Raise their Challenge to the Full
Funding Grant Agreement Under 49 U.S.C. § 5309, and Counts I through IV
Fall Outside the Zone of Interests of the Federal Transit Act............................................ 2

II.    Count V Must Be Dismissed Because it is Barred by the Statute of Limitations
and the Doctrine of Claim Preclusion, and Plaintiffs Fail to Identify a Federal
Action Challengeable Under the APA. ................................................................................ 7

    A.  Count V is Barred by the Statute of Limitations. .......................................................... 7

    B.  Count V is Barred by the Doctrine of Claim Preclusion Because the
Claim Could Have Been Raised in the *Purple Line I* Litigation. ........................ 11

    C.  The Bethesda South Station and Wilson Store Relocation are Not Federally
Funded Projects.................................................................................................... 12

III.   Count VI Must Be Dismissed Because Implementation of Post-ROD Mitigation
Measures is Not a Final Agency Action. ......................................................................... 13

CONCLUSION............................................................................................................... 15

# TABLE OF AUTHORITIES

Cases

*Beverly Hills Unified Sch. Dist. v. FTA*, No. CV 12-9861-GW (SSx),
2016 WL 4650428 (C.D. Cal. Feb. 1, 2016)..........................................................10

*Coeur D'Alene Lake v. Kiebert*,
790 F. Supp. 998 (D. Idaho 1992) .......................................................................15

*Ctr. for Biological Diversity v. Zinke*,
260 F. Supp. 3d 11 (D.D.C. 2017) .......................................................................13

*Drake v. FAA*,
291 F.3d 59 (D.C. Cir. 2002) ...............................................................................11

*Friends of the Capital Crescent Trail v. FTA*,
255 F. Supp. 3d 60 (D.D.C.) ....................................................................9, 10, 12

*Harris v. FAA*,
353 F.3d 1006 (D.C. Cir. 2004) ...........................................................................11

*Hazardous Waste Treatment Council v. EPA*,
861 F.2d 277 (D.C. Cir. 1988)...............................................................................4

*Highland Vill. Parents Grp. v. FHWA*,
562 F. Supp. 2d 857 (E.D. Tex. 2008) .................................................................10

*In re Aiken Cty.*,
645 F.3d 428 (D.C. Cir. 2011)................................................................................9

*Indian River Cty. v. Rogoff*,
201 F. Supp. 3d 1 (D.D.C. 2016).......................................................................5, 6

*Jones v. Rogers Mem'l Hosp.*,
442 F.2d 773 (D.C. Cir. 1971) .............................................................................10

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992)................................................................................................3

*Lujan v. Nat'l Wildlife Fed'n*,
497 U.S. 871 (1990) ...............................................................................................4

*Match-e-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*,
567 U.S. 209 (2012)................................................................................................7

*Monumental Task Comm., Inc. v. Foxx,*
  157 F. Supp. 3d 573 (E.D. La. 2016) ........................................................ 10

*Mountain States Legal Found. v. Glickman,*
  92 F.3d 1228 (D.C. Cir. 1996) ................................................................... 4

*Noe v. Metro. Atlanta Rapid Transit Auth.,*
  644 F.2d 434 (5th Cir. Unit B 1981) ......................................................... 15

*Parkridge 6, LLC v. U.S. Dep't of Transp.,*
  420 F. App'x 265 (4th Cir. 2011) .............................................................. 4

*Thompson Metal Fab, Inc. v. U.S. Dep't of Transp.,*
  289 F.R.D. 637 (D. Or. 2013) .................................................................... 10

*Township of Belleville v. FTA,*
  30 F. Supp. 2d 782 (D.N.J. 1998) .............................................................. 6

*Trudeau v. Fed. Trade Comm'n,*
  456 F.3d 178 (D.C. Cir. 2006) ............................................................ 12, 15

*Tyler v. Cisneros,*
  136 F.3d 603 (9th Cir. 1998) .................................................................... 13

*Tyler v. Cuomo,*
  236 F.3d 1124 (9th Cir. 2000) ............................................................ 13, 14

Statutes

5 U.S.C. § 702 .............................................................................................. 13
5 U.S.C. § 704 .............................................................................................. 12
23 U.S.C. § 139(*l*) ...................................................................... 1, 8, 10, 11
49 U.S.C. § 5301 .......................................................................................... 3
49 U.S.C. § 5309 .............................................................................. i, 1, 2, 12
49 U.S.C. § 5309(d)(2)(A) ........................................................................... 9
49 U.S.C. § 5309(k)(5) ................................................................................ 4
54 U.S.C. § 306108 ...................................................................................... 9

Rules

Federal Rule of Civil Procedure 12(b) ........................................................ 1

Regulations

23 C.F.R. § 450.316(b)(1) (1996) ............................................................... 7
23 C.F.R. § 774.9(b) .................................................................................... 10
40 C.F.R. § 1505.3 ............................................................................ 15, 16, 17

## INTRODUCTION

The full funding grant agreement ("FFGA") executed by the Federal Transit

Administration ("FTA") and the State of Maryland for the Purple Line light rail project in Prince

George's and Montgomery Counties, Maryland complied with all legal requirements, including

the Federal Transit Act, 49 U.S.C. § 5309 ("Section 5309").  In their response briefs, Plaintiffs

fail to refute any of Defendants' arguments that their amended complaint should be dismissed

under Federal Rule of Civil Procedure 12(b).  *See* Pls.' Mem. of Law in Opp'n to Defs.' Rule

12(b)(6) Mots. to Dismiss, ECF No. 51 ("Pls.' 12(b)(6) Br."); Pls.' Mem. of Law in Opp'n to

Defs.' Rule 12(b)(1) Mots. to Dismiss, ECF No. 52 ("Pls.' 12(b)(1) Br.").

Plaintiffs' first four counts in their amended complaint challenge the FFGA under four

provisions of Section 5309 that require FTA to consider the adequacy of the State's funding

resources and notify Congress before executing the grant.  Those counts should be dismissed

because Plaintiffs have not met their burden to demonstrate they have Article III standing to raise

the claims.  Nor do Plaintiffs' purported environmental and aesthetic harms fall within the zone

of interests protected by Section 5309, which is intended to facilitate federal funding for worthy

transit projects, *not* to prevent individuals from being affected by projects' potential

environmental impacts.

Plaintiffs' fifth count must also be dismissed as it raises untimely challenges under

Section 4(f) of the Department of Transportation Act and the National Historic Preservation Act

that are barred by the 150-day statute of limitations set forth in 23 U.S.C. § 139(*l*) and the

doctrine of claim preclusion.  The fifth claim could have, and should have, been raised in the

*Purple Line I* litigation, and Plaintiffs' attempt to link this claim to the FFGA rather than the

final agency actions demonstrating the agencies' compliance with Section 4(f) and the NHPA

should not provide them a second, untimely opportunity to raise their claim more than three

years after the statute of limitations has run.

Finally, the sixth count fails to identify a final agency action challengeable under the Administrative Procedure Act because the steps agencies take to implement their decisions do not themselves constitute final agency actions.  Plaintiffs' attempt to challenge the adequacy of the State's compliance with the mitigation commitments in the Record of Decision ("ROD") and FTA's oversight must be dismissed for failure to state a claim.

Federal Defendants respectfully request that Court dismiss Plaintiffs' Amended Complaint in its entirety for lack of subject matter jurisdiction under Federal Rule of Civil Procedure ("Rule") 12(b)(1) and/or failure to state a claim under Rule 12(b)(6).

## ARGUMENT

I.      **Plaintiffs Lack Article III Standing to Raise their Challenge to the Full Funding Grant Agreement Under 49 U.S.C. § 5309, and Counts I through IV Fall Outside the Zone of Interests of the Federal Transit Act.**

In their Amended Complaint, Plaintiffs alleged that they had standing based in large part on their status as users of Metrorail and other public transit systems.  After Defendants pointed out the deficiencies in this theory—noting, for example, the speculative nature of Plaintiffs' allegations, and the lack of any causal connection between the FFGA and Metrorail's longstanding challenges—Plaintiffs have abandoned the theory.  Instead, Plaintiffs focus solely on their alleged environmental and aesthetic injuries to demonstrate their standing to challenge the FFGA under Section 5309.  *See, e.g.*, Pls.' 12(b)(1) Br. 13 (noting that Friends of the Capital Crescent Trail's interests are "in preserving the ecological integrity and tranquil, natural and safe character of the Trail and of nearby areas and buildings that would be affected by the Project."); *id*. at 15 (describing Plaintiff Christine Real de Azua's environmental, aesthetic, and recreational interests); *id*. (reciting Plaintiff John Fitzgerald's "practical, professional, aesthetic and recreational" interests in the "forests along the Trail"); *id*. at 17 (alleging that "the Project will

seriously impair [Plaintiff Anna Haac's] aesthetic, recreational, community, and occupational interests in the urban and suburban forests along the Trail . . . ."). But this refocusing of their standing allegations does not meet the constitutional minimum that the standing inquiry requires. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992) (Plaintiffs must: (1) identify an injury that is "concrete and particularized" and "actual or imminent"; (2) demonstrate that the injury is "fairly . . . trace[able]" to the execution of the FFGA; and (3) show that the injury can be redressed by a favorable decision). Because the State is free to build the Purple Line with non-federal funds, *see* Fed. Defs.' Mem. in Supp. of Mot. to Dismiss Pls.' Am. Compl. Under Rule 12(b) at 14, ECF No. 49-1; Mem. Order 3, ECF No. 28, and because much of the construction work to which Plaintiffs object has already occurred, *see* The State of Md.'s Mot. to Dismiss for Lack of Subject Matter Jurisdiction & Failure to State a Claim 16-17, ECF No. 50-1, the FFGA cannot be the causal link to Plaintiffs' alleged harms, nor could a favorable decision redress their claimed injury.

In addition, Plaintiffs' choice to advance only their alleged environmental and aesthetic interests serves to highlight another fatal flaw in Counts I through IV—the fact that Plaintiffs' interests are not even marginally related to the Federal Transit Act's purpose of "foster[ing] the development and revitalization of public transportation systems." 49 U.S.C. § 5301. As noted in the moving briefs, Plaintiffs must establish that "the injur[ies] [they] complain[] of . . . . falls within the 'zone of interests' sought to be protected by the statutory provision[s] whose violation forms the legal basis for [their] complaint." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 883 (1990).

To meet this zone of interests test, Plaintiffs must demonstrate that they are either (1) the intended beneficiary of the portions of Section 5309 they seek to enforce, or (2) that they are

"peculiarly suitable challenger[s]" to alleged violations of those provisions.  *Hazardous Waste Treatment Council v. EPA*, 861 F.2d 277, 283 (D.C. Cir. 1988) (per curiam).

Plaintiffs cannot meet this test.  With respect to Count IV, Plaintiffs concede that "Congress is clearly the intended beneficiary" of 49 U.S.C. § 5309(k)(5), which requires FTA to notify Congress at least thirty days before entering into an FFGA.  Pls.' 12(b)(1) Br. 26.  But Plaintiffs also contend that Section 5309(k)(5) (entitled "Notification to Congress") protects all taxpayers by serving as "a safeguard to all those who can rightfully claim an interest in separation-of-powers style oversight on federal largesse by their elected officials . . . ."  *Id.*  No such reading of the statute is warranted.  Even if Plaintiffs' gloss on the plain language had any support, a taxpayer's interest in the expenditure of federal funds does not convey Article III standing.  *See* Fed. Defs.' Mem. In Supp. of Mot. to Dismiss Pls.' Am. Compl. 12, ECF No. 49-1; *Parkridge 6, LLC v. U.S. Dep't of Transp.*, 420 F. App'x 265, 267-68 (4th Cir. 2011) (per curiam) (citations omitted) (finding that appellants' alleged injuries from funding concerns were "more appropriately addressed in the representative branches" and amounted to a "'generalized grievance' shared in substantially equal measure by all or a large class of citizens.").  And if a claimed injury cannot support Article III standing, then it also cannot be used to fulfill the zone of interests test.  *Mountain States Legal Found. v. Glickman*, 92 F.3d 1228, 1232 (D.C. Cir. 1996) ("[T]he injury that supplies constitutional standing must be the same as the injury within the requisite 'zone of interests.'").

Plaintiffs fare no better with respect to Counts I, II, and III, which allege that FTA violated provisions of Section 5309 because it did not comply with the requirements that the Secretary:  (1) make a determination that each source of local funding for the project is "stable" and "reliable" (§ 5309(f)(1)(B)); (2) make a determination that "local resources are available to

maintain . . . and operate the . . . existing and proposed public [transit systems]" (§ 5309(f)(1)(C)); and (3) make a determination that the project is justified by its benefits and supported by an acceptable local financial commitment (§ 5309(d)(2)(A)).  *See* Pls.' 12(b)(1) Br. at 2-11, 23-26.  These requirements are intended to ensure that the Capital Investment Grant funds are distributed only to those projects that meet the statutory requirements.  There is nothing in these provisions that indicate they were intended to protect individuals from alleged environmental injuries related to projects or to it "protect members of the public who are harmed from grants not adequately vetted according to those criteria." Pls.' 12(b)(1) Br. 24.  *See, e.g.*, *Indian River Cty. v. Rogoff*, 201 F. Supp. 3d 1, 21 (D.D.C. 2016) (holding that a plaintiff alleging that a rail project would cause it safety and environmental injuries could not challenge the project's eligibility for a tax-free bond allocation, since the statutory eligibility requirements had "nothing to do with [the plaintiff's] asserted interests, nor does it protect (or regulate) those who would claim that public safety or other related interests would be impaired by a bond allocation to an ineligible project.").

Plaintiffs' counterarguments are unavailing.  Plaintiffs point out, for example, that Section 5309 requires the issuance of a ROD before execution of an FFGA. Pls.' 12(b)(1) Br. 24.  But Plaintiffs no longer allege a violation of *that* provision of Section 5309, since this Court and the Court of Appeals have rejected their challenges to the ROD.  The fact that FTA must demonstrate its National Environmental Policy Act ("NEPA") compliance with an executed ROD before executing an FFGA does not mean that any injuries falling within NEPA's zone of interests automatically fall within the zone of interests of *every* portion of Section 5309.  *See Indian River Cty.*, 201 F. Supp. 3d at 20 ("It is proper to consider this specific statutory section, rather than the [statute] as a whole

. . . .").

Next, Plaintiffs assert that because Section 5309 requires FTA to evaluate criteria addressing how well a project serves the public, the public can sue to enforce those requirements. *See* Pls.' 12(b)(1) Br. 24-25.  But Plaintiffs do not allege that they are injured by the use of federal funds on the Purple Line rather than a more-deserving project, and for good reason:  that type of generalized injury, shared by the public at large, would not give them Article III standing.  The injuries that Plaintiffs now rely on are the environmental and aesthetic injuries allegedly caused by the Project's proximity to their homes.  Again, there is no evidence that *those* injuries fall within the zone of interests protected by the portions of Section 5309 they seek to enforce.

Plaintiffs rely upon *Township of Belleville v. FTA*, 30 F. Supp. 2d 782 (D.N.J. 1998), for support.  But importantly, *Township of Belleville* turned on a specific provision of the statute at issue that provided state and local governments the opportunity to participate in "'a proactive public involvement process,'" *id.* at 793 (quoting 23 C.F.R. § 450.316(b)(1) (1996)), for which the Township (itself a local jurisdiction) was plainly an intended beneficiary.  The court noted that "[t]he import of the [] requirement appears clear.  It protects both local and state interests by insuring local and state officials the ability to participate in a meaningful way in the planning process . . . ." *Id.* at 795.  The *Township of Belleville* decision did not, however, confront the question whether individual members of the public could have raised the same claims.  And Plaintiffs here can point to no similar provision that would bring their alleged environmental and aesthetic harms within the zone of interests of the challenged provisions of Section 5309.

*Match-e-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209 (2012), is also distinguishable.  There, the plaintiff was challenging a decision by the Secretary

of the Interior to acquire land for use as a casino under a provision of the Indian Reorganization

Act. *Id*. at 224-28.  The court held that plaintiff's status as a neighboring landowner of the

proposed casino meant that his claims "arguably" fell within the zone of interests protected by

the statute.  Here, nothing about Section 5309's spending directives to the Secretary can serve as

a similar nexus between the federal funding program and Plaintiffs' claimed environmental and

aesthetic harms.

At bottom, Plaintiffs' alleged environmental, aesthetic, and recreational harms do not

give Plaintiffs Article III standing.  And even if they did, they could not serve as the basis for

their claims challenging the FFGA under Section 5309 because they do not even "arguably" fall

within the zone of interests of the statutory provisions that govern the Secretary's obligations in

selecting worthy public transit projects for funding.  Accordingly, Counts I through IV must be

dismissed.

## II.    Count V Must Be Dismissed Because it is Barred by the Statute of Limitations and the Doctrine of Claim Preclusion, and Plaintiffs Fail to Identify a Federal Action Challengeable Under the APA.

### A.    Count V is Barred by the Statute of Limitations.

In Count V, Plaintiffs allege that the agencies violated Section 4(f) and the National

Historic Preservation Act ("NHPA") by failing to adequately consider impacts related to the

Talbot Avenue Bridge, the Bethesda Metro Station South Entrance ("South Entrance"), and

relocation of the Bethesda Community Hardware and Paint Building ("Wilson Store").  Plaintiffs

contend that their claim is not barred by the statute of limitations because the Court's decision in

*Purple Line I* held that their Section 5309 claims were unripe, and that the actions they complain

of post-date the Limitation on Claims Against a Proposed Public Transportation Project, 79 Fed.

Reg. 18,113-14 (Mar. 31, 2014) ("150-day Notice").  *See* Pls.' 12(b)(6) Br. 9-11.  But Count V is

untimely and must be dismissed because the 150-day statute of limitations ran on August 28,

2014, more than three years before Plaintiffs filed this case.  *See* 150-day Notice; 23 U.S.C. § 139(l).

First, Plaintiffs concede that the 150-day Notice "left no doubt that the limitations clock had begun running for NEPA-based challenges to the ROD and the FEIS."  Pls.' 12(b)(6) Br. 10-11.  Yet Plaintiffs contend that because the 150-day Notice did not cover the FFGA, their Section 4(f) and NHPA claim may now proceed.  But NHPA and Section 4(f) compliance, like NEPA compliance, were completed in March 2014, not at the much later time the FFGA was issued.  Plaintiffs cite to no authority for their assertion and plainly misunderstand the various decisions FTA has made in authorizing the Purple Line.

Approval of a project such as the Purple Line requires analysis under a myriad of statutes and regulations.  As relevant here, the agencies prepared the March 19, 2014 ROD (*Purple Line I*, ECF No. 65 at 1-32) to demonstrate the project's compliance with NEPA; the March 2014 Final Section 4(f) Evaluation (Attachment D to ROD) (*Purple Line I*, ECF No. 66 at 17-50) ("Section 4(f) Determination") to demonstrate compliance with Section 4(f) of the Department of Transportation Act; and the March 14, 2014 Section 106 Programmatic Agreement  to demonstrate compliance with the NHPA (Attachment B to ROD).

The timing and sequencing of the analyses is governed by the various statutory and regulatory schemes.  The Section 4(f) analysis can be completed simultaneously with the NEPA process, *see* 23 C.F.R. § 774.9(b) ("[F]or actions processed with EISs [FTA] will make the Section 4(f) approval either in the final EIS or in the ROD.").  NHPA analysis must be completed "prior to the approval of the expenditure of any Federal funds on the undertaking." 54 U.S.C. § 306108.  And the NEPA analysis must be completed prior to execution of an FFGA 49 U.S.C. § 5309(d)(2)(A) ("A new fixed guideway capital project may advance to the

engineering phase upon completion of activities required under [NEPA], as demonstrated by a record of decision . . . .").  Here, the agencies worked simultaneously on the analyses under NEPA, Section 4(f), and the NHPA, which were completed in March 2014, more than three years before FTA and MTA executed the FFGA on August 22, 2017 (ECF No. 24-2 at 2-44).

While Plaintiffs correctly note that this Court held their Section 5309 claims were not ripe in the *Purple Line I* litigation, *see Friends of the Capital Crescent Trail v. FTA*, 255 F. Supp. 3d 60, 70 (D.D.C.), reconsideration denied sub nom. *Friends of the Capital Crescent Trail v. FTA*, 268 F. Supp. 86 (D.D.C. 2017), and aff'd, 877 F.3d 1051 (D.C. Cir. 2017) ("*Purple Line I*") ("[P]laintiffs' [Section 5309] claim 'rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all,' and is therefore not ripe for judicial decision." (quoting *In re Aiken Cty.*, 645 F.3d 428, 435 (D.C. Cir. 2011))), that holding has no bearing on the accrual period for their claims under Section 4(f) and the NHPA, which are not related to the timing of the FFGA.  In *Purple Line I*, the Court held that Plaintiffs' claims under Section 5309[1] could not be advanced before the FFGA was executed.  Plaintiffs' claims were unripe because they could not challenge the Section 5309 findings that had not yet been made by FTA.  However, the final decisions under Section 4(f) and the NHPA were made in March 2014, and no similar barrier to judicial review was present.  Indeed, the Court considered and rejected Plaintiffs' timely-raised Section 4(f) claims in *Purple Line I*.  *See* 255 F. Supp. 3d at 71 (granting summary judgment in favor of the agencies with respect to Plaintiffs' Section 4(f) claims). Plaintiffs present no reasoned argument here as to why they are entitled to raise their Count V

---

[1] Whether Plaintiffs have standing to raise their challenges to the FFGA under Section 5309 was not a question before the Court and was not decided in the prior litigation.  *See generally Purple Line I,* 255 F. Supp. 3d 60.

three years after the statute of limitations has run.  *See* 23 U.S.C. § 139(*l*); 150-day Notice

(listing the Section 4(f) *de minimis* determination and Section 106 Programmatic Agreement as

final agency actions subject to the 150-day statute of limitations).  Even if the Section 4(f)

Determination and Section 106 Programmatic Agreement omitted any appropriate analysis of the

Talbot Avenue Bridge, the Wilson Store, and the Bethesda South Station—which they did not—

the time to challenge those decisions has decidedly passed.[2]

Second, Plaintiffs rely upon their allegations that the "events complained of post-date"

the ROD and 150-day Notice to advance their claims now.  Pls.' 12(b)(6) Br. 11.  But the

agencies necessarily had to analyze the potential impacts from the Purple Line under all

applicable statutes and make a decision before taking any action.  In fact, the Project's effects on

the Talbot Avenue Bridge, Bethesda South Station, and Wilson Store were well known at the

time of the final Environmental Impact Statement ("FEIS") and ROD, *see, e.g., Purple Line I*,

ECF No. 70 at 42 (Purple Line FEIS addressing Talbot Avenue Bridge); Purple Line I, ECF No.

69 at 114 (Purple Line FEIS explaining that "the [locally preferred alternative] connected to the

---

[2] Plaintiffs' attempt to distinguish and dismiss the authority cited by Defendants falls short.  *See* Pls.' 12(b)(6) Br. 12.  Each of the cases Defendants cite involve claims that courts have considered and dismissed as barred by the statute of limitations set forth in 23 U.S.C. § 139(*l*). *See Beverly Hills Unified Sch. Dist. v. FTA*, No. CV 12-9861-GW (SSx), 2016 WL 4650428, at *108-15 (C.D. Cal. Feb. 1, 2016) (dismissing plaintiff's Clean Air Act claim as untimely); *Monumental Task Comm., Inc. v. Foxx*, 157 F. Supp. 3d 573, 587 n.1 (E.D. La. 2016) ("Plaintiffs filed this lawsuit nearly five years after the FTA published notice of the approval of the Loyola/UPT project.  Therefore, any challenges to those findings are barred by the statute of limitations."); *Thompson Metal Fab, Inc. v. U.S. Dep't of Transp.*, 289 F.R.D. 637, 644 (D. Or. 2013) (plaintiff's "failure to timely file its claims within the statute of limitations period set forth under 23 U.S.C. § 139(*l*) is fatal."); *Highland Vill. Parents Grp. v. FHWA*, 562 F. Supp. 2d 857, 862-63 (E.D. Tex. 2008) (dismissing claims as untimely under 23 U.S.C. § 139(*l*)).  And it is black letter law that a court should dismiss claims filed after the statute of limitations has run. *See Jones v. Rogers Mem'l Hosp.*, 442 F.2d 773, 775 (D.C. Cir. 1971) (explaining that a complaint may be dismissed under Rule 12(b)(6) when the statute of limitations has run if "it appears beyond doubt that the plaintiff can prove no state of facts in support of his claim that would entitle him to relief.").

elevators for the new south entrance to the Bethesda [South] Metro station [ ], a separate project funded by Montgomery County.").  And the claim accrual date to challenge the sufficiency of the agencies' analysis and decisions under Section 4(f) and the NHPA began when the 150-day Notice was issued on March 31, 2014, not later when the complained-of activities commenced. *See* 23 U.S.C. § 139(*l*); 150-day Notice ("The purpose of this notice is to announce publicly the environmental decision by FTA on the [Purple Line] and to activate the limitation on any claims that may challenge these final environmental actions."); *cf. Harris v. FAA*, 353 F.3d 1006, 1010 (D.C. Cir. 2004) ("The right of action first accrues on the date of the final agency action.").

At bottom, Plaintiffs' attempt to link their Section 4(f) and NHPA claim to execution of the FFGA does not circumvent the statute of limitations.  Count V is untimely and must be dismissed.

## B.     Count V is Barred by the Doctrine of Claim Preclusion Because the Claim Could Have Been Raised in the *Purple Line I* Litigation.

Count V must also be dismissed because it is barred by the doctrine of claim preclusion because the claim could have—and should have—been raised in *Purple Line I.  See Drake v. FAA*, 291 F.3d 59, 66 (D.C. Cir. 2002).  While Plaintiffs argue that "claims tethered to FFGA execution were not ripe for adjudication" in *Purple Line I*, Pls.' 12(b)(6) Br. 12, Plaintiffs' claims under Section 4(f) and the NHPA are properly directed at the decision documents representing the agencies' compliance under those statutes, the Section 4(f) Determination and Section 106 Programmatic Agreement, respectively, *not* the FFGA.  Nothing in the plain language of Section 5309 provides the connection between the FFGA and Count V that Plaintiffs attempt to make here.  *See generally* 49 U.S.C. § 5309.  Section 5309 does not address Section 4(f) or historic resources in any way and does not provide a basis for challenging the Purple Line under Section 4(f) or the NHPA.

Plaintiffs contend that they "cannot be barred by claim preclusion for failure to bring premature claims in prior litigation." Pls.' 12(b)(6) Br. 13.  But they fail to demonstrate that Count V was indeed premature.  The fact that the Court decided their Section 4(f) claims on the merits in *Purple Line I* belies any notion that Plaintiffs could not have advanced Count V in the prior case.  *See Purple Line I*, 255 F. Supp. 3d 60, 70-72 (D.D.C. 2017) (rejecting Plaintiffs' Section 4(f) claims), aff'd on other grounds, 877 F.3d 1051 (D.C. Cir. 2017).

Count V is both untimely and barred by the doctrine of claim preclusion and should be dismissed under Rule 12(b)(6).

**C.      The Bethesda South Station and Wilson Store Relocation are Not Federally Funded Projects.**

Plaintiffs concede that construction of the Bethesda South Station and relocation of the Wilson Store are not federally funded projects or part of the Purple Line.  *See* Pls.' 12(b)(6) Br. 14.  And Plaintiffs do not refute Federal Defendants' argument that they have not identified a final agency action challengeable under the Administrative Procedure Act ("APA").  *See* 5 U.S.C. § 704; *Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 188-89 (D.C. Cir. 2006) (explaining that the APA's waiver of the United States' sovereign immunity extends only to federal final agency actions).  Instead, Plaintiffs simply allege that FTA and MTA have violated Section 4(f) because they have a duty to "monitor" the actions of their "partners."  Pls.' 12(b)(6) Br. 14.  However, Plaintiffs cite to no authority for that proposition.

Plaintiffs have not met their burden to identify a final agency action within the meaning of 5 U.S.C. § 702 that is reviewable under the APA, and for which a challenge is not time-barred, with respect to their challenge to the South Entrance and the Wilson Store, and thus the claim must be dismissed.  *See Ctr. for Biological Diversity v. Zinke*, 260 F. Supp. 3d 11, 29-30 (D.D.C. 2017) (dismissing complaint for failure to state a claim because plaintiff failed to

identify a final agency action).

### III.   Count VI Must Be Dismissed Because Implementation of Post-ROD Mitigation Measures is Not a Final Agency Action.

Contrary to Plaintiffs' assertions, Federal Defendants make no argument that FTA is not required to ensure that the mitigation measures set forth in the ROD are implemented.  *See* Pls.' 12(b)(6) Br. 14-16; 40 C.F.R. § 1505.3.

What Federal Defendants *do* dispute is Plaintiffs' contention that private plaintiffs have the ability to challenge an alleged failure to ensure implementation of mitigation.  Plaintiffs rely principally on *Tyler v. Cisneros*, 136 F.3d 603, 610 (9th Cir. 1998) ("*Tyler II*").

But a later decision in the same case read *Tyler II* as specifically barring consideration of the exact argument Plaintiffs seek to make here:  that 40 C.F.R. § 1505.3 gave private plaintiffs the ability to sue a federal agency for failure to ensure that a third party carried out mitigation measures.  *Tyler v. Cuomo*, 236 F.3d 1124, 1135-36 (9th Cir. 2000) ("*Tyler III*").  The Ninth Circuit held that the plaintiffs lacked standing to bring claims against the federal agency, *id.*, and could proceed against a local government only because the public was an intended third-party beneficiary to a particular provision in a Memorandum of Agreement ("MOA").  *See id.* at 1135 ("It would appear that Stipulation 5's reference to the public would include Homeowners and, thus, that Homeowners have standing as third-party beneficiaries to the MOA."); *cf. id.* at 1133 ("We conclude that plaintiffs have standing against the City under Stipulation 5 of the MOA, which requires the City to "'take the objection into account and consult as needed' with respect to any objection 'by a member of the public' to the manner in which the MOA is being implemented.").

The *Tyler* cases are distinguishable from the instant case as the FFGA does not "specifically mention the public's right to bring objections"; indeed, it does not mention the

public at all.  The FFGA contains no requirement to seek input or comment from the public that could provide Plaintiffs standing as third-party beneficiaries.  *Compare with Tyler III*, 236 F.3d at 1133, 1135.

Moreover, Plaintiffs significantly over-read the requirements of 40 C.F.R. § 1505.3.  The Council on Environmental Quality's NEPA regulation states that that mitigation measures "shall be implemented by the lead agency," but then goes on to specify *how* the agency should implement the measures, most notably by including appropriate conditions in grants.  *Id*. ("The lead agency shall: (a) Include appropriate conditions in grants, permits or other approvals. (b) Condition funding of actions on mitigation.").  *Id.*  Section 1505.3 in no way suggests that where, as here, the agency *has* included conditions in the FFGA compelling compliance with the ROD, *see* ECF No. 24-2 at 42 (Attachment 7 to FFGA, stating that "[t]he mitigation measures and other Project features that reduce adverse impacts, to which FTA and MTA, in conjunction with the Maryland Department of Transportation (MDOT) committed in the environmental record, may not be eliminated from the Project, except by FTA's written consent in accordance with applicable laws and regulations."), that third parties can bring a NEPA claim alleging that the project sponsor is not complying with those conditions.

The Fourth Circuit considered and rejected similar arguments in *Village of Bald Head Island v. U.S. Army Corps of Engineers*, in which plaintiffs challenged the implementation of a dredging project in Wilmington Harbor.  714 F.3d 186 (4th Cir. 2013).  There, the court held that "'project implementation' is neither 'agency action' nor 'final' agency action subject to judicial review under the APA."  *Id*. at 195; *see also id.* at 194 ("[A]llowing 'judicial review of the [plaintiff's] claims would place a burden on courts to manage ongoing agency actions and would eviscerate Congress' carefully crafted scheme for judicial review.'"); *Noe v. Metro. Atlanta*

*Rapid Transit Auth.*, 644 F.2d 434, 438 (5th Cir. Unit B 1981) (explaining that NEPA's

"legislative history indicates a specific intent to deny relief to private individuals who may be

injured when an environmental impact statement is not followed"); *Coeur D'Alene Lake v.*

*Kiebert*, 790 F. Supp. 998, 1011 (D. Idaho 1992) ("[N]o cause of action can be based on the

failure of a project to live up to the assessments contained in a FEIS").

Plaintiffs' Count VI challenging the adequacy of project implementation, must be

dismissed because they have not identified a final agency action reviewable under the APA.  *See*

*Trudeau*, 456 F.3d at 188-89 (noting that the failure to identify a "final agency action" can result

in dismissal under Rule 12(b)(6)).

## CONCLUSION

For the foregoing reasons, Federal Defendants respectfully request the Court to dismiss

Plaintiffs' Amended Complaint in its entirety under Rule 12(b).


Respectfully submitted this 26th day of April, 2018.

> JEFFREY H. WOOD
> Acting Assistant Attorney General
> United States Department of Justice
> Environment & Natural Resources Division
>
>  /s/  *Tyler L. Burgess*
> TYLER L. BURGESS (DC 1025617)
> Trial Attorney
> Natural Resources Section
> PO Box 7611
> Washington, DC  20044-7611
> (202) 616-4119
> tyler.burgess@usdoj.gov
>
> *Attorneys for Federal Defendants*

OF COUNSEL
NANCY-ELLEN ZUSMAN, Assistant Chief Counsel for Litigation and Regional Operations
Federal Transit Administration

CHARLES E. ENLOE, Trial Attorney
U.S. Department of Transportation
Office of General Counsel

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 26th day of April, 2018, I filed the foregoing document

electronically through the CM/ECF system, which caused all parties or counsel of record to be

served by electronic means, as more fully reflected on the Notice of Electronic Filing.

_____/s/  *Tyler L. Burgess*_____

TYLER L. BURGESS

U.S. Department of Justice
